Robert Herdelin, Harry Eisenlen and Dearnley Park Civic Association, Appellants, *v.* Abe Green- Board, Appellees.

Argued October 8, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*Donald M. Moser,* for appellants.

*Walter W. Rabin,* with him, of counsel, *Meltzer & Schiffrin,* for appellee.

OPINION BY JUDGE ROGERS, November 25, 1974:

In November 1971, Abe Greenberg, the appellee, applied to the Zoning Board of Adjustment of the City

of Philadelphia for a variance from the use regulations of the city's zoning ordinance so that he might construct seven contiguous retail stores in districts zoned for residential uses. In the course of the Board hearing, he agreed that he would not establish on his premises any place for the service of food or drink if the Board should so restrict its grant of a variance. Some persons from the neighborhood were present at the hearing, with counsel, opposing the introduction of new eating or drinking establishments. The principal opponent seems to have been the appellant, Robert Herdelin, the owner of a nearby taproom. The Board granted the variance without restriction[1] on January 18, 1972. The protestants, who are the appellants here, apparently relying on Greenberg's professed willingness to abide a restricted variance, did not file a timely appeal from the grant of variance.

On August 14, 1972, the city's Department of Licenses and Inspections issued to Abe Greenberg zoning and building permits for the seven retail stores. On November 21, 1972, one Joseph DiLeo obtained a use permit from the Department for the operation at one of the stores of a restaurant-pizzeria, and on November 22, 1972, one Philip Ruggerio obtained a use permit for a cocktail lounge and restaurant in another of the stores.[2] Both DiLeo and Ruggerio entered into leases with Abe Greenberg, the former on December 1, 1972 and the latter on November 27, 1972, and both there-

---

[1] One of four members of the Board voting would have qualified the approval of the variance by forbidding food or beverage stores.

[2] A representative of the Department of Licenses and Inspections testified that it was departmental practice where a variance for retail stores had been granted to issue permits for any use permitted in the C-2 zoning district. Restaurants and bar-restaurants are included among such uses.

after spent, or entered into contracts to spend, considerable sums of money for improvements and equipment.

Robert Herdelin learned of the proposed drinking establishment in November, 1972 and talked with Abe Greenberg on the subject. On December 1, 1972, the appellants' present counsel, the attorney who represented them at the variance hearing having since become a judge, wrote to Mr. Greenberg in behalf of the applicants protesting the use of any of the stores in violation of the variance, requesting Greenberg to negotiate peaceably and threatened "to seek a preliminary injunction and . . . [to] . . . file a complaint with the Zoning Board and the Department of Licenses and Inspections". On December 5, 1972, a notice required to be posted by the Liquor Control Board appeared on the store proposed as a licensed drinking establishment. Not until January 10, 1973, 49 days after the grant of the first use permit and 40 days after the appellants' counsel wrote Mr. Greenberg protesting the allegedly unlawful proposed uses, did the appellants file their appeal to the Zoning Board of Adjustment seeking revocation of the use permits.

The appellee asserted the untimeliness of the appeal to the Board before the Board and the court below. The Board concluded that it had the power to waive the limitation of time for appeal and revoked the use permits on the ground that the restaurants and cocktail lounge were not retail stores within the meaning of the variance. The court below, although mentioning the appellee's contention that the appeal to the Board was untimely, decided the case on its merits, noting that the variance was unconditional and holding, contrary to the Board, that the phrase "retail stores" encompassed restaurants and bar-restaurants. We affirm the order of the lower court, not on the merits, which we do not reach, but on the ground that the appeal to

the Board was untimely and that the Board committed an error of law in entertaining the appeal.

The Zoning Code of Philadelphia County, which has the effect of a statute adopted by the General Assembly[3] contains the following:

"§14-1705

(1) Appeals to the Zoning Board of Adjustment may be taken by any person aggrieved by, or by any officer, department, board, or commission of the City affected by any decision of the Department rendered under this Title.

(2) Any such appeal shall be taken within a reasonable time after the date of the decision by filing with the Zoning Board of Adjustment a notice of appeal specifying the grounds therefor.

. . ."

"§14-1807

The Board shall have the power to adopt regulations, not inconsistent with the provisions of this Chapter, in accordance with the terms of the Philadelphia Home Rule Charter."

Rule 1 of the Board's regulation reads: "Appeals to the Board shall be taken within ten (10) days from the date of the order, requirement, decision, or determination which is the subject of appeal."

Authorized regulations of an administrative agency have the force and effect of law and bind the agency equally with others. *Good v. Wohlgemuth, Secretary of Welfare,* 15 Pa. Commonwealth Ct. 524, 327 A.2d 397 (1974). The Board's ten day rule is plainly a definition of the reasonable appeal period provided by the Code. It is not a requirement which the Board can waive at its discretion. This is not to say that the Board may not allow a late appeal where the appellant did not know,

---

[3] See *School District of Philadelphia v. Zoning Board of Adjustment,* 417 Pa. 277, 281, 207 A.2d 864 (1965).

or have reason to know, of the departmental decision from which he seeks to appeal. This was clearly not the case here. The principal protestant knew that a use other than one he assumed had been permitted by the original variance was proposed before December 1, 1972. On December 1, 1972, his and his fellow protestants' counsel advised Mr. Greenberg of his intention ultimately to take the matter to the Board. The premises was posted under the regulations of the Liquor Control Board on December 5, 1972 and this notice was seen by some of the appellants. No reason which would justify delay in the appeal until January 10, 1973 appears in the record.

Substantial interests, both public and private, are in issue in zoning matters. On the one hand, whole neighborhoods are affected, often permanently, by changes of land use. On the other, owners of properties and those with whom they deal, are often substantially incommoded in consequence of the denial of their right, subject to zoning regulations, to use their own or have the use of others' lands.[4] By necessity, the proving ground of which interest, public or private, is to be accommodated is before the boards and commissions where the cases are first tried. Procedures established for the conduct of the hearing and disposition of such cases before the administrative and quasi-administrative agencies to whom they are committed are not, therefore, to be treated casually or lightly disregarded. Perhaps the most important of such procedures are those relating to the times for taking those steps necessary

---

[4] Recognition of the importance of the subject is found in the recent amendment of the *Home Rule Charter and Optional Plans Law*, Act of April 13, 1972, No. 63, 53 P.S. §1-102 by the addition of municipal planning and zoning to the relatively few subjects upon which home rule charters may not act. Act of July 3, 1974, Act. No. 149, 53 P.S. §1-302 (Purdon's 1974 Legislative Service No. 4, page 441).

to bring matters to a prompt decision at the municipal level. The instant Board's holding that it may waive its regulation limiting the time for appeal without evidence that the appellants did not know or did not have reason to know of the action appealed from or, as in this case, in the face of a record affirmatively demonstrating such knowledge, is a misconception and an error of law which requires the reversal of its order. Our holding comports, except for the time fixed for appeal, with Section 915 of the Pennsylvania Municipalities Planning Code,[5] providing: *"No person shall be allowed to file any proceeding with the board later than thirty days after any application* for development, preliminary or final, *has been approved* by an appropriate municipal officer, agency or body if such proceeding is designed to secure reversal or to limit the approval in any manner *unless such person alleges and proves that he had no notice, knowledge, or reason to believe that such approval had been given.* If such person has succeeded to his interest after such approval, he shall be bound by the knowledge of his predecessor in interest." (Emphasis supplied.)

Affirmed.

---

[5] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10915. Of course, the Pennsylvania Municipalities Planning Code is not effective in Philadelphia. 53 P.S. §10105 (Supp. 1974-1975).