Herbert S. Isaacson and Ruth R. Isaacson, his wife, Appellants *v.* Joseph Flanagan and Patricia Flanagan, his wife, and Bristol Township, Appellees.

Argued April 6, 1983, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*William E. Benner, Power, Bowen and Valimont,* for appellants.

*Edwin N. Popkin,* with him *Thomas R. Hecker, Begley, Carlin & Mandio,* and *Clyde W. Waite, Stief, Luber, Waite, Gross & Sagoskin,* for appellees.

OPINION BY JUDGE ROGERS, June 2, 1983:

The Court of Common Pleas of Bucks County upheld a decision of the Bristol Township Zoning Hearing Board that Herbert Isaacson and his wife, Ruth's appeal to the zoning hearing board from the action of the zoning officer granting the appellees, Joseph Flanagan and Patricia, his wife, a permit to use a property at 7507 Bristol Pike as a gasoline station was untimely filed. We affirm.

The Isaacsons own property next to 7507, numbered 7505 Bristol Pike which was also used for a gasoline station. Both properties are located in a zoning district where the use of property as a gasoline station is not now permitted but both were used as gas stations at a time before that use was prohibited by the zoning ordinance.

Before the Flanagans purchased the property at 7507 Bristol Pike on April 1, 1980, the property was owned by the Exxon Corporation and had been used

by Exxon as a gasoline station until October 16, 1978 when Exxon closed it, removed the tanks and boarded the windows.

The chronology of events is as follows:

From *April 1, 1975,* the Isaacsons leased their property at 7507 to Mauger and Company, Inc., the Isaacsons' gasoline supplier.

After *April 1, 1975,* Mauger and Company sub-leased the Isaacsons' station to the Flanagans and the Flanagans thereafter operated the station.

In or about *August or September, 1979,* Mauger and Company told the Isaacsons that the Flanagans intended to open a gasoline station on the next door Exxon property.

On *November 19, 1979,* the Isaacsons notified Mauger and Company and the Flanagans of the termination of their leases as of January 1, 1980 and, that if they did not remove themselves by that date damages would be sought.

On *November 30, 1979,* the Flanagans applied for permission of the Bristol Township zoning officer to use the former Exxon station at 7507 as a gasoline station. The permit was issued *December 7, 1979.*

In *December, 1979,* the Isaacsons learned that the Flanagans had applied to the federal Department of Energy for the transfer of the gasoline allocation of the station on the Isaacsons' property to the Exxon property for the Flanagans' use.

On *December 28, 1979,* the Isaacsons' lawyer wrote a letter to the Department of Energy with a copy to the Isaacsons which stated:

It is my understanding that Mr. Flanagan intends to open a service station that is currently not in use and which is adjacent to the currently used service station, after Mr. Flanagan vacates the premises in question. . . .

On or about *January 15, 1980,* the Isaacsons filed a complaint in federal district court seeking, among other things, a declaratory judgment determining their right to the allocation of gasoline with respect to their property at 7505, that Mr. Flanagan be ordered to immediately vacate the premises at 7505 Bristol Pike and be restrained from transferring the Isaacsons' gasoline allocation of their property to the former Exxon property. The Isaacsons alleged in their complaint that:

> Subsequent to Mauger's termination of its sublease with Flanagan, Flanagan advised Mauger that it was establishing as of February 1, 1980, another retail sales outlet for gasoline at a location that is currently not in use, adjacent to the gasoline station that is owned by plaintiffs.

The Isaacsons' legal memorandum in support of their motion for a preliminary injunction said:

> Mauger has since advised the plaintiffs and Flanagan that the supply of gasoline that is currently allocated to the plaintiffs' gasoline station, under the program of the United States Department of Energy, will be transferred to the new station that Flanagan intends to operate as of February 1, 1980;

The Isaacsons' supplemental memorandum in federal court stated:

> Therefore, Flanagan has no right to transfer the allocation to this newly acquired retail gasoline outlet.

On *January 24, 1980,* the Flanagans executed an agreement to buy the Exxon property contingent upon their obtaining zoning approval.

On *February 2, 1980,* the Isaacsons filed a complaint in equity in the Court of Common Pleas of Bucks County asking the court to order the Flanagans

to account for moneys and profits received by them "as a result of their unlawful occupancy and operation of [the Isaacsons'] gasoline station after January 1, 1980." The complaint contained the following averments:

> 12. Defendant has purchased a currently vacant motor fuel retail outlet ("New Outlet") adjacent and adjoining plaintiff's Gasoline Station, and sought to have the United States Department of Energy (DOE) approve the transfer of the supply of gasoline that DOE had allocated to plaintiffs' Gasoline Station, to defendant's New Outlet, as soon as defendant opens the New Outlet.
>
> . . . .
>
> 14.(a) Defendant is attempting to divert to defendant's New Outlet the customers presently patronizing plaintiffs' Gasoline Station, and is thereby causing plaintiffs damage by unlawfully interfering with plaintiffs' Gasoline Retail Business.

On *April 1, 1980,* as earlier noted, the Flanagans settled with Exxon for the property. They then began operating their gasoline service station at 7507.

On *April 25, 1980,* the Isaacsons filed an appeal from the action of the zoning officer granting the Flanagans permission to use their property at 7507 as a gas station. This was more than five months after the permit had been issued.

On *October 27, 1980,* a hearing was held before the zoning hearing board at which time Mr. Isaacson testified as follows:

> Q: You testified earlier that you came into knowledge somehow of an application for a new gasoline station allocation.

A: Yes, right.

Q: Now, when did you come into that knowledge?

A: That was around March 18, approximately. At that time we went to the court in Doylestown to have Mr. Flanagan evicted.

Q: Mr. Flanagan was still on the property at 7505 at that time?

A: That's correct.

Q: And did it come to your attention that Mr. Flanagan was making application for a new allocation?

A: I believe I saw that application for a new allocation in Mr. Swichar's [appellants' counsel] office at that time.

Q: And was it upon seeing that application that the thought occurred to you about zoning?

A: That's correct.

Section 915 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10915 provides in pertinent part:

> *No person shall be allowed to file any proceeding with the board later than thirty days after any application for development,* preliminary or final, *has been approved* by an appropriate municipal officer, agency or body if such proceeding is designed to secure reversal or to limit the approval in any manner, *unless such person alleges and proves that he had no notice, knowledge, or reason to believe that such approval had been given. . . .* (Emphasis added.)

The board and the trial court found that the Isaacsons had reason to believe that zoning approval had been given in December, 1979 and January, 1980 and that they had, therefore, failed to prove as they asserted

that they had no notice, knowledge or reason to believe that permission had been given until April 1, 1980, the day on which the Flanagans opened their station.

Section 915 of the MPC places the burden "upon those persons seeking review to allege and prove they had no notice, knowledge, or reason to know of the issuance of the permit." *In re: Appeal of Gilbert,* 34 Pa. Commonwealth Ct. 299, 304, 383 A.2d 556, 558 (1978). We recognized in *Herdelin v. Greenberg,* 16 Pa. Commonwealth Ct. 405, 328 A.2d 552 (1974) that strong considerations of policy require strict adherence to zoning procedures at the municipal level in zoning cases:

> Procedures established for the conduct of the hearing and disposition of such cases before the administrative and quasi-administrative agencies to whom they are committed are not, therefore, to be treated casually or lightly disregarded. Perhaps the most important of such procedures are those relating to the time for taking those steps necessary to bring matters to a prompt decision at the municipal level.

*Id.* at 409-10, 328 A.2d at 555.

The trial court took additional evidence so that we review its action to determine whether it committed a manifest abuse of discretion or an error of law. *Pyzdrowski v. Pittsburgh Board of Adjustment,* 437 Pa. 481, 485, 263 A.2d 426, 429 (1970). The appellants contend that the court committed a manifest abuse of discretion in finding as it did, that they had reason to believe that a zoning permit had been given to the Flanagans much earlier than April 1, 1980 when the Flanagans opened for business. We must be mindful in this class of case that "[a]n abuse of discretion is

not merely an error of judgment, but if in reaching a conclusion the law is overriden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice or ill will, as shown by the evidence or the record, discretion is abused." *Mielcuszny v. Rosol,* 317 Pa. 91, 93-94, 176 A. 236, 237 (1934). *See Man O'War Racing Association v. State Horse Racing Commission,* 433 Pa. 432, 451 n. 10, 250 A.2d 172, 181 n. 10 (1969). We find nothing remotely approaching an abuse of discretion as thus described in the court's findings and conclusions made from this record. The appellants learned of Flanagans' efforts to obtain a federal allocation of gasoline for the Exxon property in December, 1979. On February 2, 1980 almost two months before they filed this appeal, they filed a court complaint alleging that the Flanagans had purchased the Exxon property and intended to use it as a gasoline station.

The appellants' assertion that the trial court made an error of law because this court has assertedly twice decided that the time limitation of Section 915 starts to run only when the appellant has actual knowledge of the issuance of a use permit, is simply incorrect. The cases cited, *Lycoming Burial Vault Co. v. Montoursville Zoning Hearing Board,* 41 Pa. Commonwealth Ct. 294, 399 A.2d 144 (1979) and *Appeal of Gilbert,* 34 Pa. Commonwealth Ct. 299, 383 A.2d 556 (1978) hold only that the appeals in those cases were untimely because the appellants had actual knowledge of the grants of the permits more than thirty days before they appealed.[1]

Order affirmed.

---

[1] Our decision that the appeal to the zoning hearing board was untimely, makes it unnecessary for us to address the appellants' contention, that the nonconforming use which had been established on the Exxon property had been abandoned.

#### ORDER

AND Now, this 2nd day of June, 1983, the order of the Court of Common Pleas of Bucks County dated April 12, 1982 is affirmed.