506 A.2d 887

The HIGHLAND PARK COMMUNITY CLUB OF
PITTSBURGH, David Goldhammer, Bela
Kovach, Jeanne Shaffer

v.

The ZONING BOARD OF ADJUSTMENT Of the CITY
OF PITTSBURGH,

and

Appeal of Jack HOLZAPFEL.

Supreme Court of Pennsylvania.

Argued Sept. 16, 1985.

Decided March 26, 1986.

Reargument Denied July 8, 1986.

Edward C. Leckey, Pittsburgh, for appellant.

Gretchen Donaldson, Pittsburgh, for Zoning Board of Adjustment of the City of Pittsburgh.

R. Dell Ziegler, Pittsburgh, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, P.C., for Highland Park Community Club of Pittsburgh, David Goldhamer, Bela Kovach and Jeanne Shaffer.

Before NIX, C.J., and LARSEN, McDERMOTT, HUTCH-
INSON and ZAPPALA, JJ.

OPINION OF THE COURT

HUTCHINSON, Justice.

A Pittsburgh property owner, Jack Holzapfel, (appellant),
appeals by allowance an order of Commonwealth Court,
reversing the Allegheny County Court of Common Pleas in
a zoning case. Common Pleas had affirmed the action of
the Pittsburgh Zoning Board of Adjustment in denying the
appeal of the Highland Park Community Club and others
(appellees before us), protesting the action of the City
Zoning Administrator. The Administrator had approved a
certificate of occupancy for six dwelling units in appellant's
property, which is located in a residential district zoned for
one and two family residences, on the assumption that the
passage of time had converted an improper nonconforming
use into one that was lawful. While reaching opposite
conclusions, both Commonwealth Court and Common Pleas
considered the landowner's "vested right" to this multiple
occupancy certificate the principal issue in the case. The
record does not show appellant attempted to obtain a valid
permit. He used the premises in violation of safety regula-
tions until and after the regulatory authorities notified him
of those violations. We hold he did not obtain a "vested
right" to his nonconforming use and affirm the Common-
wealth Court.

The facts in this case appear as follows.[1] Appellant
testified before the Zoning Board of Adjustment that he
purchased the subject residential property at 5814 Wellesley
Avenue in the Highland Park section of Pittsburgh in 1971.
The District has been a Two-Family Residence District at
least since 1923 when that type of district was designated a

1. The supporting documentation provided by both parties in this case
   can best be described as minimal.

"B" residence district in accordance with Section 9 of Ordinance No. 372 of 1923. Since then only one family and two family dwellings have been among the uses permitted by the Zoning Code in such districts, now identified as R2.[2]

Appellant testified that at the time he purchased it the building contained seven dwelling units. On cross-examination, he conceded that he knew the property was in an R2 District. No evidence was given on whether his grantor had complied with the Act of July 27, 1955, P.L. 288, as reenacted and amended by the Act of May 11, 1959,[3] 21 P.S. §§ 611–615, (Supp.1985), which requires a seller to deliver to the purchaser, not later than at the settlement, a use registration permit showing the property's legal use and zoning classification.[4] 21 P.S. § 611(b). Nor is there any indication in the record that an occupancy permit for multiple dwelling units was ever sought by appellant from the Superintendent of Building Inspection, the official with jurisdiction to issue it, until appellant was directed to do so by that office in late 1975 or early 1976.[5] The record does contain appellant's January 13, 1976 application for an occupancy permit. However, a June 4, 1976 response from the Superintendent of Building Inspection shows that the application would not be approved until a second means of egress was provided for each unit, the interior stairway was

**2.** The designation was changed from "B" to "R2" in Ordinance No. 192, effective May 10, 1958.

**3.** This Act was further reenacted and amended by the Act of November 28, 1973, P.L. 348, No. 121, amended June 23, 1976, P.L. 400, No. 89.

**4.** Section 3004 of the 1971 edition of the City Zoning Code imposes on the Zoning Administrator the duty of issuing the certificates of zoning classification required by the act.

**5.** It should be noted that in 1958, the Superintendent of Building Inspection was the only Administrator of the Zoning Code under Ordinance No. 192 of 1958, approved May 10, 1958. By 1971, the Zoning Code provided for a separate administrator charged with approving applications received for occupancy permits as being in compliance with the city's zoning ordinance.

enclosed, fire doors were installed at every floor level and a two-hour fire enclosure was provided for the furnance.[6]

Appellant then applied for a Building Permit for the furnace enclosure. The inspection record notes that work on the building had not begun on June 25, 1976, July 13, 1976 or August 5, 1976. On January 28, 1977, the inspector wrote "Revoke[,] work not started[,] occupancy has 7 apts. not 6[,] 2 in Basement." Record, Exhibit 8. Upon being advised that approval for seven units would require an appeal to the Board of Zoning Adjustment and the Board of Standards and Appeals established under Section 305 of the Building Code, Ordinance No. 300, effective November 4, 1947, appellant wrote to the Bureau of Building Inspection in October of 1977, stating that he would eliminate one of the apartments in the basement upon termination of his tenant's lease ten months later, at the end of August 1978.

On November 2, 1977, a new Building Permit was issued to complete the enclosure of the furnace room, the original Building Permit issued in June 1976 apparently having been revoked or having expired by operation of Section 220 of the Building Code of 1947.[7] On December 12, 1977, a Building Permit for the installation of fire escapes, as a second means of egress for the building tenants, was issued to a contractor.[8] Although appellant stated that he was advised that he had not received an Occupancy Permit

6. The letter from the Administrator, Bureau of Building Inspection carries the following notice across the bottom. "Penalty—The ordinance provides that a violator thereof shall, upon conviction, be subject to a fine of not more than $500 or imprisonment for not more than 90 days. Each day that a violation is permitted to exist constitutes a separate offense." Record, Exhibit 19.

7. This Section provides: "If, after issuance of a permit, the construction work has not been started within six (6) months or, subsequent to the starting thereof, has been discontinued for a period of six (6) months, said permit shall become void, unless extended by the Board of Standards and Appeals."

8. There is no Building Permit in the record for construction enclosing the interior stairs.

because the original 1976 application was lost, it would appear that the Bureau properly refused to issue such a permit in the absence of the safety measures required by the Building Code and that thereafter the earlier Building Permit was revoked or expired by operation of law.

Eventually in July of 1979, appellant filled out a new application for a Certificate of Occupancy. The Zoning Code Administrator approved this later application for an Occupancy Permit on July 25, 1979.[9] Based, presumably, on the completion of the safety installations, the Superintendent of the Bureau of Building Inspections issued a Certificate of Occupancy on October 10, 1979.[10]

Learning of the issuance of this permit in the spring of 1982, appellees filed an appeal with the Board of Zoning Adjustment, protesting the action of the Zoning Administrator in approving multiple occupancies in an R2 district. A hearing before the Zoning Board of Adjustment was held on June 10, 1982, at which the testimony primarily addressed: the duration of multiple occupancy on the premises, appellant's applications for occupancy and building permits and appellant's expenditures for the safety installations required by the Building Code. The Board denied the appeal on December 16, 1982. Its "Findings of Fact" are mere summaries of the testimony presented by the parties from which the Board without discussion concluded that the property owner had a "vested right":

> The Board has considered carefully all testimony adduced at the instant case and is of the opinion that the subject protest appeal must be denied. The Board bases its

9. The record contains a single zoning compliance check list, dated June 8, 1982, in which the Office of the Zoning Administrator notes entries in the Polk City Directory of "6 apts. w/names" for 1954 and 1957. Record, Exhibit 6.

10. The record of a 1976 Building Inspection appears to make some reference to the duration of the existing occupancy. It is, however, so illegible as to be uninformative. No reference to the zoning classifications can be discerned.

decision on the vested right and expenditure of unrecoverable funds by the owner of the subject property, and hereby upholds the decision of the Zoning Administrator in this matter.

Zoning Board of Adjustment, Zoning Case No. 339 of 1982.

On appeal, Allegheny County Common Pleas affirmed the finding of a "vested right" in appellant based on its own finding from the record that appellant had met the five criteria of *Department of Environmental Resources v. Flynn*, 21 Pa. Commonwealth Ct. 264, 344 A.2d 720 (1975). Using the same criteria, Commonwealth Court reversed on appeal. This Court adopted the *Flynn* criteria in *Petrosky v. Zoning Hearing Board of the Township of Upper Chichester*, 485 Pa. 501, 402 A.2d 1385 (1979). With such diverse results in the lower courts, we must now determine which of them is supported by substantial evidence in the record and whether the Zoning Board of Adjustment abused its discretion or committed an error of law. We hold that the Board's conclusion that appellant had a "vested right" to an occupancy permit in this case is not supported on this record.

The Pittsburgh City Zoning Code leaves the initial determination of whether a use is properly nonconforming to the Administrator, Section 905.02(b), Ordinance No. 15, 1979, with a right to appeal his action to the Zoning Board of Adjustment, Section 909.04(a), Ordinance No. 15, 1979. In this case, the Zoning Administrator apparently approved the issuance of a certificate of occupancy in 1979 on the assumption that it was a continuation of a previously approved nonconforming use. There is nothing in this record, however, to indicate that he had confirmed such an assumption by a review of the pertinent records of previously approved nonconforming uses. A permissible nonconforming use is defined in the Code as: "A use of a structure or land other than a sign, *lawfully* existing on the effective date of this zoning ordinance or subsequent amendment

hereto, which was erected or altered for a use that does not completely conform to the use regulations applicable in the district in which it is located." Section 903.02(h), Ordinance No. 95, 1979 (emphasis added). The Code prohibits any changes from a conforming use to a nonconforming use and specifically voids any use subsequently discovered to be dependent on an erroneously issued permit. Section 905.03, Ordinance No. 15, 1979. Thus, the issuance in this case of a certificate of occupancy for more than two families was in violation of the use limitations the Code establishes for R2 Districts, and its approval by the Administrator was an error of law unless the doctrine of "vested rights" applies.

■ Appellant's argument that he is entitled to retain his certificate of occupancy for the multiple dwellings in the subject premises under the doctrine of "vested rights" fails for the following reasons. The concept of the acquisition of "vested rights" in an unlawful nonconforming use commencing after the effective date of the restrictions of the zoning ordinance which make it nonconforming is a judicial construct designed to provide individual relief in zoning cases involving egregious statutory or bureaucratic inequities. In part it involves the equitable concept of detrimental reliance. As summarized in *Flynn, supra,* and reiterated in *Petrosky, supra,* there are five factors to be weighed in determining whether a permit holder has acquired a "vested right" in his permit, even though it was issued on the basis of mistake:

1) his due diligence in attempting to comply with the law;

2) his good faith throughout the proceedings;

3) the expenditure by him of substantial unrecoverable funds;

4) the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit;

5) the insufficiency of the evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit.

*Petrosky,* 485 Pa. at 507, 402 A.2d at 1388, (quoting *Flynn,* 21 Pa. Commonwealth Ct. at 272, 344 A.2d at 725).

A review of the facts outlined above demonstrates that, unlike appellants in *Flynn* and *Petrosky,* appellant failed to act with due diligence to comply with the law. Knowing that the Eleventh Ward was zoned for no more than two family residences when he purchased the subject property, he made no move to acquire a legal basis for his multiple family dwelling through any of the three means set forth in the Zoning Code, *i.e.* by applying to obtain municipal approval for a special exception, a variance [11] or for a permitted nonconforming use. Once prodded by the Bureau of Building Inspection, appellant here paid the two dollar application fee for a certificate of occupancy and an additional five dollars for a building permit to construct one of the several features required for his tenants' safety. Record, Exhibits 1 and 16. Then he let the building permit lapse in January 1977 by failing to begin construction. In November of that year, he again applied for a building permit for the furnace enclosure and by mid-December of 1977 he appears to have hired a contractor to install a second egress system for the building in the form of fire escapes. There is no record of any building permit for construction to shield the interior staircase, an additional

---

11. These terms are defined in the Zoning Code as follows:
"Special exception" means a modification of the regulations of this Zoning Ordinance which the Board is permitted to authorize in specific instances, listed in this Zoning Ordinance, under the terms, procedure and conditions prescribed herein.
Variance: A modification of the literal provisions of this ordinance which the Board is permitted to grant when strict enforcement of said provisions would cause undue hardship owing to circumstances unique to the individual property on which the variance is sought.
Section 903.02, Ordinance No. 15, 1979.

requirement in the letter of June 4, 1976 denying appellant's occupancy permit. It was July of 1979 when appellant again applied for an occupancy permit, which was granted in December 1979. The granting of this permit and the testimony before the Zoning Board of Adjustment permit us to infer that the furnace enclosure and the fire escapes were eventually installed. No evidence can be found in the record that work on the shielding for the interior staircase was ever begun or completed.

The foregoing recital suggests that not only "due diligence" but "good faith" was also lacking. Appellant's counsel stated at the Board hearing that appellant had received approval for six unit occupancy, Record, N.T. at 30, yet the record contains no formal documentation in support of this statement. Petitioner also testified that he spent between eight and ten thousand dollars on the required safety features, Record, N.T. at 31, but the only substantiation of these expenses is an estimate on the application for a building permit of fourteen hundred dollars as the cost of the furnace enclosure. Record, Exhibit 8.

Whatever the exact amount of appellant's expenditures may be, they are not "unrecoverable" in the same sense the funds expended for a partially completed home in *Flynn, supra,* and a completed garage in *Petrosky, supra.* In both of these earlier cases appellants applied for permits before they completed the purchase of their properties. No such "good faith" or analogous "reliance" on official representation has been demonstrated here. Appellant's purchase of these premises was completed without any regard for the residence restrictions in the Zoning Code. He applied for an occupancy permit only when directed to do so, because the Pittsburgh Zoning Code explicitly prohibits the use of buildings which are not in compliance with its provisions.[12] Appellant's actions were thus taken to retain the use of his revenue producing properties and not in

12. Section 981.01, Ordinance No. 15, 1979.

reliance on representations by the employees of the Bureau of Building Inspection.

■ We cannot accept appellant's invocation of the doctrine of "vested rights" on this record. A pre-condition to its application is a good faith attempt to comply with the requirements of the applicable Zoning Code. Where total physical compliance would produce a hardship, good faith requires that the property owner address the zoning authority under the appropriate statutory procedure for a special exception, a variance or to establish his right to a nonconforming use. For appellant to have ignored the Zoning Code for five years and then argue that his response to a Bureau of Building Inspection directive to apply for an occupancy permit was indicative of his "good faith" is inappropriate.

■ Appellant has vigorously argued that appellees' protest to the Board of Zoning Adjustment was not timely filed. He argues that Rule 401 of the Rules of Procedure of the Board of Adjustment bars appeals from decisions of the Superintendent of the Bureau of Building Inspection taken more than thirty days "after the appellant first has notice of the decision of the Superintendent of the Bureau of Building Inspection", citing *Herdelin v. Greenberg*, 16 Pa.Commonwealth Ct. 405, 328 A.2d 552 (1974) to the effect that the appellees are bound by the knowledge of their original attorney. That case is not on point because the Zoning Board rules there applicable provided for a ten day appeal period, and the attorney hired by protestants in *Herdelin* had notified the permit holder of his intention to appeal, but took no action for forty days. At least one of the protestants before this Board attested on the record that he did not become aware of the permit more than thirty (30) days before the filing of the appeal. The Board's allowance of the appeal was both correct and appropriate.

Since there is no substantial evidence supporting the first four factors required to establish a "vested interest" in appellant, the matter of the adverse effects of continued occupancy of these premises by six families needs no extended discussion. It is clear from the record that this occupancy has in the past put the tenants' and neighbors' safety at risk and that some of the city's safety requirements may still be unfulfilled.

As we noted earlier, the Zoning Code defines a Nonconforming Use as "a use of a structure or land ..., *lawfully* existing on the effective date of this ordinance ..., which does not completely conform to the use regulations applicable in the district in which it is located." (Emphasis added.) Residential occupancy in this district has been limited to one or two family dwellings since 1923, and testimony in the record shows the premises were in lawful, conforming, one family use in the 1930's. It follows that the use of the premises for six or seven dwelling units has been an unlawful, impermissible use from its inception. The Zoning Administrator's approval of such occupancy is, therefore, an error of law and the Zoning Board of Adjustment's finding of a "vested right" in appellant is not supported by substantial evidence in this record. The judgment of Commonwealth Court is affirmed.

ZAPPALA, J., files a dissenting opinion in which LARSEN, J., joins.

FLAHERTY and PAPADAKOS, JJ., did not participate in the consideration or decision of this case.

ZAPPALA, Justice, dissenting.

I respectfully dissent. The majority holds that "[t]he Board's allowance of appeal was both correct and appropriate," rejecting the Appellant's argument that the protest challenging the issuance of the occupancy permit was untimely. This holding rests on the terse observation that

"[a]t least one of the protestants before this Board attested on the record that he did not become aware of the permit more than thirty (30) days before the filing of the appeal." This "attestation on the record", however, consists of no more than an affidavit signed by one of the protestants, David Goldhammer, containing the vague, self-serving statement that "[t]he first time I knew that a Certificate of Occupancy had been issued for that house was in the middle of May—about two weeks before the Memorial Day weekend. Mr. Crawford [another protestant and attorney for the group of protestants] and I were chatting about the neighborhood and he told me that he had discovered that a Certificate of Occupancy had been issued to Mr. Holzapfel. I was surprized [sic]—and upset—and told him that I would like to join in an appeal." More importantly, this affidavit was not sworn to until eighteen days *after* the Zoning Board hearing on the appeal.[1]

Section 10915 of the Municipalities Planning Code provides:

No person shall be allowed to file any proceeding with the board later than thirty days after any application for development, preliminary or final, has been approved by an appropriate municipal officer, agency or body if such proceeding is designed to secure reversal or to limit the approval in any manner unless such person alleges *and proves* that he had no notice, knowledge, or reason to believe that such approval had been given. If such person has succeeded to his interest after such approval, he shall be bound by the knowledge of his predecessor in interest.

53 P.S. § 10915 (emphasis added). Record 67a. It is disturbing that the majority would accept as proof sufficient to

1. It is also noted that although the affidavit contains a jurat signed by Attorney Crawford identifying himself as a notary public, it does not contain a statement of the date of expiration of his commission nor is it impressed with a notarial seal. *See* 57 P.S. § 160.

meet the protestants' burden under the foregoing statute an affidavit of dubious validity submitted *ex parte* after the hearing. At the very least, the Appellant was denied any opportunity to challenge this "evidence" by way of cross-examination. This is especially disconcerting in light of the fact that the only testimony offered at the hearing relevant to the issue of timeliness indicated that the witness (Mr. Crawford) knew of the issuance of the permit more than thirty days prior to the filing of the appeal.

Because the protestants did not, by evidence *properly* on the record, meet their statutory burden of proving that they "had no notice, knowledge, or reason to believe that ... approval had been given," I would hold that the Board did not have jurisdiction to entertain the petition. *See Township of Upper Moreland v. Gaunt,* 16 Pa. Commonwealth Ct. 334, 328 A.2d 556 (1974).

LARSEN, J., joins in this dissenting opinion.