# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James H. Williams,                          :
                          Petitioner        :
                                            :
          v.                                :      No. 82 M.D. 2017
                                            :      Submitted: November 16, 2018
John E. Wetzel (Secretary of                :
Corrections) Dorina Varner (Chief           :
Grievance Officer) Barry Smith              :
(Facility Manager, S.C.I. Houtzdale)        :
Susan McQuillen (I/M Employment             :
Officer) (Houtzdale) Ginter (Unit           :
Manager, S.C.I. Houtzdale) Pittsinger       :
(Food Service Manager, Houtzdale)           :
Derring (Food Service Staff Member,         :
Houtzdale) Pa. Department of                :
Corrections Officials,                      :
                          Respondents       :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge[1]
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ELLEN CEISLER, Judge


**OPINION BY JUDGE BROBSON          FILED:  NOVEMBER 18, 2019**


This is a matter in the Court's original jurisdiction.  Presently before the Court for consideration is an application for summary relief, filed by James H. Williams (Williams), *pro se*, with respect to a petition for review (Petition) filed by Williams.  In his Petition, Williams seeks a multitude of declaratory, injunctive, and compensatory forms of relief against various officers and employees of the

---

[1] This matter was assigned to the opinion writer before September 1, 2019, when Judge Simpson assumed the status of senior judge.

Pennsylvania Department of Corrections (DOC) and DOC, collectively DOC Defendants,[2] relating to DOC's interpretation of its administrative directive DC-ADM 816[3] and DOC's alleged use of Section 1.M.7 of DC-ADM 816[4] to circumvent the procedural requirements provided in Section 93.10 of DOC's regulations, 37 Pa. Code § 93.10.[5]  For the reasons set forth below, we grant

---

[2] Williams seeks relief against Secretary of Corrections John E. Wetzel, Chief Grievance Officer Dorina Varner, Facility Manager, S.C.I. Houtzdale, Barry Smith, I/M Employment Officer, Houtzdale, Susan McQuillen, Unit Manager, S.C.I. Houtzdale, Ginter, Food Service Manager, Houtzdale, Pittsinger, Food Service Staff Member, Houtzdale, Derring, and DOC.

[3] We take judicial notice of DOC's administrative directive, DC-ADM 816, which appears on the DOC official website at:

https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/816%20Inmate%20Compensation.pdf

(Last visited November 14, 2019.)  See *Figueroa v. Pa. Bd. of Prob. & Parole*, 900 A.2d 949, 950 n.1 (Pa. Cmwlth. 2006) (taking judicial notice of information found on DOC website).

[4] DC-ADM 816 pertains to inmate compensation.  Section 1.M.7 of DC-ADM 816 provides:

> Removal of an inmate from a work assignment for reasons *other than misconduct* or medical necessity must be handled by a Unit Management Team action.  The supervisor must submit written information regarding the reason(s) to the Unit Management Team, who will discuss the situation with the inmate and attempt to resolve the problem.  The Unit Management Team may remove the inmate from the job assignment and his/her pay may be suspended.

(Emphasis added).

[5] DOC's regulation set forth at 37 Pa. Code § 93.10 outlines the sanctions applicable when DOC issues a misconduct report, also known as a DC-141.  As we explained in our earlier decision in this matter:

> Before DOC can impose a sanction under this regulation, however, DOC must follow the procedures set forth in subsection (b) of the regulation.  The procedures in subsection (b) include:  (1) written notice of charges; (2) hearing before an impartial hearing examiner or an informal resolution process for charges specified in the DOC Inmate Handbook; (3) an opportunity for the inmate to tell his story and present relevant evidence; (4) assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively; (5) a written statement of the decision and reasoning of the hearing body based upon the

2

Williams' application for summary relief with respect to his request for declaratory and injunctive relief.

In his Petition, Williams avers that DOC is removing inmates from their job assignments using DC-ADM 816 as a means to bypass hearing requirements provided by DOC's regulations. Williams contends that DOC is attempting to bypass these hearing requirements because the hearing examiner "dismiss[ed] so many misconduct reports because staff were not following proper procedures." (Petition at 16.) DOC's actions, Williams avers, are in violation of the due process rights contained in the DOC Inmate Handbook (Inmate Handbook)[6] and this Court's decision in *Bush v. Veach*, 1 A.3d 981 (Pa. Cmwlth. 2010), wherein we held that DOC must comply with the procedural requirements found in 37 Pa. Code § 93.10(b) when it is attempting to remove permanently an inmate from his job detail after the issuance of a DC-141. In response, DOC filed a preliminary objection in the nature of a demurrer to this action, challenging the legal sufficiency of Williams' claims. By opinion and order dated January 25, 2018, we overruled DOC's preliminary objections. In our decision, we described the facts of this action as follows:

---

preponderance of the evidence; and (6) an opportunity to appeal the decision in accordance with the DOC Inmate Handbook. 37 Pa. Code § 93.10(b).

*Williams v. Wetzel*, 178 A.3d 920, 922 n.1 (Pa. Cmwlth. 2018).

[6] We take judicial notice of the Inmate Handbook, which appears on the DOC official website at:
http://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/2017%20DOC%20Inmate%20Handbook.pdf.
(Last visited November 14, 2019.) *See Figueroa v. Pa. Bd. of Prob. & Parole*, 900 A.2d 949, 950 n.1 (Pa. Cmwlth. 2006) (taking judicial notice of information found on DOC website).

3

According to the allegations in the [Petition], Williams is an inmate at the State Correctional Institution at Houtzdale (SCI-Houtzdale), where he maintained a job assignment in the facility's kitchen. On December 30, 2016, a DOC officer performed a routine pat search on Williams prior to Williams leaving work. The officer discovered approximately two and one-half pounds of sugar concealed in Williams' boots. DOC did not issue Williams a misconduct report (DC-141) for this transgression.

On January 1, 2017, Williams filed an inmate grievance with DOC, alleging that DOC removed Williams from his job assignment without first affording him due process. Specifically, Williams alleged that in order for DOC to remove Williams from his job assignment, DOC must first afford Williams a hearing pursuant to DOC policy DC-ADM 801 and 37 Pa. Code § 93.10,[ ] relating to inmate discipline.

On January 4, 2017, prior to DOC responding to Williams' grievance, a DOC Unit Manager conducted a Support Team hearing at Williams' cell door. During this hearing, the Unit Manager informed Williams that Williams' work supervisor sent an email to the Unit Management Team regarding Williams' transgression, and that, as a result, the Unit Management Team removed Williams from his job assignment.

On January 17, 2017, DOC denied Williams' grievance. The denial provided that the procedures set forth in 37 Pa. Code § 93.10(b) did not apply, because Williams' removal was not the result of the issuance of a DC-141. Instead, DOC asserted that Section 1.M.7 of DC-ADM 816[ ] controlled Williams' removal. Moreover, Section 1.B.6 of DC-ADM 816 provides that inmates do not have a right to be assigned or continue any specific work assignment. On that basis, DOC denied Williams' grievance.

Williams appealed this decision to the facility manager, arguing that because he "committed a misconduct," DOC must follow the procedural requirements found in 37 Pa. Code § 93.10(b). DOC

denied this appeal, stating that DOC's first response "appropriately addressed" Williams' issues.

Williams submitted a final appeal to DOC's Chief Grievance Officer, again arguing that DOC did not comply with proper procedure in removing Williams from his work position. Specifically, Williams argued that DOC misinterpreted the language of Section 1.M.7 of DC-ADM 816. As Section 1.M.7 provides that Unit Management Teams could remove an inmate for reasons "other than misconduct," Williams argued that he could not be removed under this section, as he had committed a form of misconduct.

DOC again denied Williams' appeal, as Williams presented "no evidence that DOC policy DC-ADM 816 was violated."

*Williams v. Wetzel*, 178 A.3d at 921-22 (footnotes omitted) (citations omitted).

Williams now seeks summary relief before this Court on his contention that DOC has used its interpretation of Section 1.M.7 of DC-ADM 816 to remove inmates from job assignments without having to adhere to the procedural requirements in Section 93.10(b) of DOC's regulations. In response to Williams' application, DOC asks this Court to deny Williams summary relief, arguing that, pursuant to its interpretation of Section 1.M.7 of DC-ADM 816, DOC is permitted to remove inmates from job assignments without providing a hearing. Moreover, DOC contends that it is entitled to deference from the Court as to its interpretation of this administrative directive.

With regard to applications for summary relief, Pennsylvania Rule of Appellate Procedure 1532(b) provides: "At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Applications for summary relief are "similar to the relief envisioned by the rules of civil procedure governing summary judgment." *Brittain v. Beard*, 974 A.2d 479, 484 (Pa. 2009).

5

Where, therefore, "a party's right to judgment is clear and no material issues of fact are in dispute[,]" we may grant an application for summary relief. *Jubelirer v. Rendell*, 953 A.2d 514, 521 (Pa. 2008) (quoting *Calloway v. Pa. Bd. of Prob. & Parole*, 857 A.2d 218, 220 n.3 (Pa. Cmwlth.), *appeal quashed*, 864 A.2d 1199 (Pa. 2004)).

DOC's administrative directives address inmate misconduct and disciplinary procedures. When inmates violate rules set forth by DOC, Section 1.A of DC-ADM 801[7] provides: "the violation *shall* be reported and disposed of either by an informal or formal process." Misconducts are defined as "[a]ny violation of [sic] alleged violation of [DOC] rules, regulations, or policies." Glossary of Terms, DC-ADM 801. Section 1.B of DC-ADM 801 requires misconducts to be reported "via a DC-141, Part 1, Misconduct Report." Further, inmates charged with misconduct "*shall* receive a copy of the [DC-141]." Section 1.B of DC-ADM 801 (emphasis added). DOC classifies misconduct by two categories: Class I charges and Class II charges. Section 1, Attachment 1-A of DC-ADM 801. Only some types of misconduct may be eligible for informal resolution—*i.e.*, Class I charges numbers 35-46 and all Class II charges. *Id*. Class II charges include "[t]aking unauthorized food from the dining room or kitchen" and "[p]ossession of any item not authorized for retention or receipt by the inmate not specifically

---

[7] We take judicial notice of DOC's administrative directive, DC-ADM 801, which appears on the DOC official website at:

https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/801%20Inmate%20Discipline.pdf

(Last visited November 14, 2019.) *See Figueroa v. Pa. Bd. of Prob. & Parole*, 900 A.2d 949, 950 n.1 (Pa. Cmwlth. 2006) (taking judicial notice of information found on DOC website).

enumerated as Class I contraband."[8]  *Id.*  When a Shift Commander recommends a DC-141 for informal resolution, a Unit Manager and at least one other member of the Unit Management Team must meet with the offending inmate for disposition of the charges.  Section 2.A.4 of DC-ADM 801.  At the informal resolution meeting, the inmate "shall be permitted to give his/her version of the events."  *Id.*  Inmates may lose their job assignments for work-related misconduct as part of the informal resolution process, but inmates may appeal the informal resolution.  Section 2.B.1.g of DC-ADM 801; Section 2.C.1, 2 of DC-ADM 801.  These provisions coincide with Section 93.10 of DOC's regulations, which outlines the sanctions applicable when DOC issues a DC-141.  *See* 37 Pa. Code § 93.10.

Pursuant to DOC's regulations, inmates who commit Class II misconducts may suffer, among other sanctions, "change, suspension[,] or removal from job."  37 Pa. Code § 93.10(a)(2)(v).  Before DOC can impose a sanction under this regulation, however, DOC must follow the procedures set forth in subsection (b) of the regulation.  37 Pa. Code § 93.10(b).  Subsection (b) lists six different procedural requirements applicable when imposing inmate discipline:

> (1) Written notice of charges.
>
> (2) Hearing before an impartial hearing examiner or *an informal resolution process for charges specified by [DOC] in the [] Inmate Handbook . . . .*
>
> (3) Opportunity for the inmate to tell his story and to present relevant evidence.

---

[8] DC-ADM 801 lists Class I contraband as:

[M]oney, implements of escape, non-prescribed drugs (or drugs which are prescribed, but which the inmate is not authorized to possess), drug paraphernalia, poisons, intoxicants, materials used for fermentation, property of another, weapons or other items which in the hands of an inmate present a threat to the inmate, others[,] or to the security of the facility.

7

(4) Assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively.

(5) Written statement of the decision and reasoning of the hearing body based upon the preponderance of the evidence.

(6) Opportunity to appeal the misconduct decision in accordance with procedures in the [] Inmate Handbook.

37 Pa. Code § 93.10(b) (emphasis added). DOC must adhere to these procedures, as this Court made clear in deciding *Bush*.

In *Bush*, an inmate lost his job assignment to the kitchen when a corrections officer caught him taking ice cream sandwiches from the kitchen. The corrections officer orally informed the inmate that taking food from the kitchen without authorization was a Class II misconduct pursuant to the Inmate Handbook. A Unit Manager gave the inmate an informal hearing and informed the inmate that the sanction for his misconduct would be removal from his job assignment. This Court concluded that DOC denied the inmate the process that was due under Section 93.10 of DOC's regulations. *Bush*, 1 A.3d at 984. In coming to this conclusion, this Court identified job loss as one possible sanction for a Class II misconduct under Section 93.10. *Id*. This Court also stated that DOC must adhere to the procedures provided by its regulation before it may impose any sanction. *Id*. One such procedural requirement is an impartial hearing or informal resolution process as set forth by the Inmate Handbook. *Id*. Pursuant to the Inmate Handbook at that time,[9] a Unit Manager could choose to impose certain sanctions after the informal resolution process; however, the sanctions concerning removal from a job

---

[9] The operative version of DC-ADM 801 at the time of the *Bush* decision was the 2008 version of the policy. DOC reissued DC-ADM 801 on May 20, 2015, with updated policies.

8

post were temporary and lasted up to seven days. *Id*. at 985. In order for DOC to permanently remove the inmate under the Inmate Handbook at that time, DOC would have needed to address the misconduct through a formal hearing process. *Id*. Accordingly, this Court concluded that DOC denied the inmate the process he was due under Section 93.10 of its regulations. *Id*.

Here, Williams contends that DOC has used its interpretation of DC-ADM 816 to remove inmates from job assignments without having to adhere to the procedural requirements in Section 93.10(b) of its regulations. In response, DOC argues that pursuant to DC-ADM 816, it is permitted to remove inmates from job assignments without the process normally due under DC-ADM 801 or Section 93.10(b) of DOC's regulations. Specifically, DOC contends that Section 1.M.7 of DC-ADM 816, which allows "removal of an inmate from a work assignment for reasons *other than misconduct*," permits DOC's action because it interprets the phrase "other than misconduct" to mean other than the issuance of a DC-141 or misconduct report. Further, DOC implores the Court to defer to its interpretation of its administrative directives and regulations.

DOC is correct that Pennsylvania law permits deference to an agency's interpretation of its own regulations in some instances. *See, e.g., Turchi v. Phila. Bd. of License & Inspection Review*, 20 A.3d 586, 595-96 (Pa. Cmwlth. 2011) (concluding that quasi-judicial body erred by not deferring to local agency's reasonable interpretation of its own ordinance). DOC, however, ignores the maxim—as recognized by this Court in *Turchi*—from the Supreme Court of the United States' decision in *Martin v. Occupational Safety and Health Review Commission*, 499 U.S. 144 (1991), that provides: "In situations in which 'the meaning of regulatory language *is not free from doubt*,' the reviewing court should

9

give effect to the agency's interpretation so long as it is 'reasonable,' . . . that is, so long as the interpretation 'sensibly conforms to the purpose and wording of the regulations[.]'" *Martin*, 499 U.S. at 150-51 (quoting *Ehlert v. United States*, 402 U.S. 99, 105 (1971); *N. Ind. Pub. Serv. Co. v. Porter Cty. Chapter of Izaak Walton League of Am., Inc.*, 423 U.S. 12, 15 (1975)) (emphasis added).

In this instance, Section 1.M.7 of DC-ADM 816, an administrative directive, provides: "Removal of an inmate from a work assignment for reasons *other than misconduct* or medical necessity must be handled by a Unit Management Team action." Even if we were to agree that DOC is entitled to deference with regard to its administrative directives (as opposed to regulations), it is clear that the words "other than misconduct" mean just that—*i.e.*, situations other than an act of misconduct. Consequently, we need not defer to DOC's interpretation of DC-ADM 816 because its meaning is clear. Even if we held otherwise, DOC's interpretation is unreasonable because it conflicts with the provisions of DC-ADM 801 that address misconducts. As we stated earlier in this opinion, DC-ADM 801 defines misconduct as violations or alleged violations of DOC's rules and regulations. Misconduct is not defined as a DC-141 or misconduct report. If DOC wanted to define the word "misconduct" as the issuance of a DC-141, it should have drafted the definition accordingly. DOC cannot define misconduct one way in an administrative directive and then attempt to redefine the word as it appears in another administrative directive to suit its purposes. Accordingly, the analysis in our earlier opinion overruling DOC's preliminary objections holds true:

> As defined by the Inmate Handbook, Williams' alleged actions could result in a Class II misconduct charge. Despite DOC's failure to issue a DC-141, it nonetheless imposed sanctions upon Williams commensurate with a Class II misconduct charge. . . . DOC may not use the removal procedures for removal in

10

situations "other than misconduct" set forth in Section 1.M.7 of DC-ADM [816] to remove an inmate from a job position based on what amounts to work-related misconduct. To hold otherwise would allow DOC to circumvent the procedure for job removal in the case of work-related misconduct explicitly set forth in 37 Pa. Code § 93.10(b).

*Williams*, 178 A.3d at 924. DOC has failed to follow the procedure for the informal resolution process under DC-ADM 801. Pursuant to this Court's holding in *Bush*, therefore, DOC has denied Williams the process he is due under Section 93.10(b) of its regulations. Consequently, we find no material facts in dispute concerning Williams' claim that DOC has used its interpretation of DC-ADM 816 to remove inmates from job assignments without having to adhere to the procedural requirements in Section 93.10(b) of DOC's regulations.

Based on the above discussion, we will grant Williams' application for summary relief with respect to his request for declaratory and injunctive relief. Specifically, we declare that DOC is required to follow the procedural requirements set forth in Section 93.10(b) of DOC's regulations when removing an inmate from a job assignment based on misconduct, regardless of whether DOC has issued a DC-141 in connection with the alleged misconduct, and that DOC failed to do so when removing Williams from his kitchen job. Thus, with regard to DOC's removal of Williams from his kitchen job, DOC shall comply with the procedural safeguards set forth in Section 93.10(b) of its regulations and determine whether DOC properly removed him from his job. In other words, DOC shall provide Williams with notice, opportunity to be heard and present witnesses with assistance, and a written

11

determination from which he may appeal in accordance with the procedures set forth in the Inmate Handbook.[10]  *See* 37 Pa. Code § 93.10(b).

_____
P. KEVIN BROBSON, Judge

---

[10] On June 25, 2019, Williams filed an application for relief, requesting disposition of his application for summary relief, which is now moot due to the filing of this opinion.  The Court had delayed disposition of his application for summary relief pending this Court's en banc decision in *Dantzler v. Wetzel*, ___ A.3d ___ (Pa. Cmwlth., No. 488 M.D. 2018, filed September 19, 2019). In a footnote in *Dantzler*, although the Court called into question the continuing viability of *Bush*, it declined to overrule it.  Thus, *Bush* remains controlling law.  As discussed above, in *Bush*, we held that DOC must adhere to the procedures outlined in Section 93.10(b) of its regulations when removing an inmate from a prison job due to misconduct.

We do not in any way recognize or confer on Williams any substantive rights with regard to his prison job nor do we hold that DOC must follow its statements of policy in the form of administrative directives.  Rather, our holding merely requires DOC to adhere to the procedural requirements set forth in Section 93.10(b), a duly promulgated DOC regulation.  This holding conforms to long-standing case law requiring agencies to adhere to their regulations.  *See Popowsky v. Pa. Pub. Util. Comm'n*, 853 A.2d 1097, 1107-08 (Pa. Cmwlth. 2004) (en banc) ("The [Public Utility Commission], like any other agency, cannot ignore or fail to apply its own regulations, and those persons subject to the agency's regulation are also bound."), *aff'd*, 910 A.2d 38 (Pa. 2006); *Teledyne Columbia-Summerill Carnegie v. Unemployment Comp. Bd. of Review*, 634 A.2d 665, 668 (Pa. Cmwlth. 1993); ("A duly promulgated regulation has the force and effect of law, and it is improper for the Board to ignore or fail to apply its own regulation."); *In re Bentleyville Plaza, Inc.*, 392 A.2d 899, 901 (Pa. Cmwlth. 1978) ("[A]dministrative agencies are bound equally with others by their own regulations which have the force and effect of law."); *Herdelin v. Greenberg*, 328 A.2d 552, 554 (Pa. Cmwlth. 1974) ("Authorized regulations of an administrative agency have the force and effect of law and bind the agency equally with others."); *Good v. Wohlgemuth*, 327 A.2d 397, 400 (Pa. Cmwlth. 1974) (en banc) ("The properly authorized rules and regulations of an administrative agency have the force and effect of law and bind the agency equally with others.").

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James H. Williams, : 
                      Petitioner : 
                                      : 
            v. :   No. 82 M.D. 2017
                                        : 
John E. Wetzel (Secretary of : 
Corrections) Dorina Varner (Chief : 
Grievance Officer) Barry Smith : 
(Facility Manager, S.C.I. Houtzdale) : 
Susan McQuillen (I/M Employment : 
Officer) (Houtzdale) Ginter (Unit : 
Manager, S.C.I. Houtzdale) Pittsinger : 
(Food Service Manager, Houtzdale) : 
Derring (Food Service Staff Member, : 
Houtzdale) Pa. Department of : 
Corrections Officials, : 
                    Respondents : 

# O R D E R

AND NOW, this 18th day of November, 2019, Petitioner's application for summary relief, seeking declaratory and injunctive relief, is GRANTED in accordance with the attached opinion.

Petitioner's application for relief, filed June 25, 2019, is DENIED as MOOT.

 

                                           _____
                                           P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James H. Williams,             :
                 Petitioner   :
                         :
            v.              :   No. 82 M.D. 2017
                         :   Submitted: November 16, 2018

John E. Wetzel (Secretary of   :
Corrections) Dorina Varner (Chief  :
Grievance Officer) Barry Smith   :
(Facility Manager, S.C.I. Houtzdale) :
Susan McQuillen (I/M Employment :
Officer) (Houtzdale) Ginter (Unit  :
Manager, S.C.I. Houtzdale) Pittsinger :
(Food Service Manager, Houtzdale)  :
Derring (Food Service Staff Member, :
Houtzdale) Pa. Department of     :
Corrections Officials,         :
               Respondents  :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ELLEN CEISLER, Judge

**DISSENTING OPINION**
**BY JUDGE SIMPSON**         **FILED:  November 18, 2019**

Respectfully, I dissent.  The majority opinion on summary relief, and the opinion on preliminary objections, completely fail to address extensive case law holding that a prison's adoption of policies and practices creates neither rights in inmates nor a constitutionally protected interest triggering the inmates' due process protections.  E.g., Dantzler v. Wetzel, ___ A.3d ___ (Pa. Cmwlth., No. 488 M.D. 2018, filed Sept. 19, 2019) (en banc), 2019 WL 4492508.  Indeed, in Dantzler we held that lack of adherence to any mandatory language in 37 Pa. Code §93.10, the same regulation cited by the majority opinion here, "cannot form the basis of a due

process claim." Id. at __, slip op. at 9-10, 2019 WL 4492508, at *4 (quoting Curtis v. Canino (Pa. Cmwlth., No. 160 M.D. 2015, filed Mar. 6, 2017), slip op. at 5, 2017 WL 877319, at *2 (unreported)).[1]

Further, the majority opinion on summary relief and the opinion on preliminary objections fail to address the impact of the U.S. Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995), in which the Court considered whether enforceable interests are created by prison regulations. This Court followed the Sandin ruling in Luckett v. Blaine, 850 A.2d 811 (Pa. Cmwlth. 2004).

Moreover, the majority opinion on summary relief and the opinion on preliminary objections fail to address the "disclaimer" language of two policy statements cited in those opinions, DC-ADM 801(VI) ("Rights Under This Policy") and DC-ADM 816 (VI) ("Rights Under This Policy"). Both policy statements make clear that: "This policy does not create any rights in any person …." Dantzler, __ A.3d at __, slip op. at 6, 2019 WL 4492508, at *4 (emphasis in original).

Additionally, the majority opinion on summary relief and the opinion on preliminary objections rely on an opinion from a divided panel of this Court, Bush v. Veach, 1 A.3d 981 (Pa. Cmwlth. 2010). I dissented to that opinion, and I continue to disagree with the holding for the reasons set forth in my dissent. The continued viability of Bush was recently called into question in our published, *en banc* opinion in Dantzler, ___ A.3d at ___ n.6, slip op. at 10 n.6, 2019 WL 4492508, at *4 n.6.

---

[1] I cite this case for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

<u>See</u> <u>also</u> <u>Bronson v. Wetzel</u> (Pa. Cmwlth., No. 610 M.D. 2017, filed June 26, 2018), 2018 WL 3117234 (unreported).

While there is general agreement that agencies should adhere to their own regulations, an additional consideration is: what is the proper remedy in case the Department of Corrections allegedly fails to do so? In this case, there is a three-tiered grievance process for the complaining inmate. <u>Williams v. Wetzel</u>, 178 A.3d 920 (Pa. Cmwlth. 2018) (opinion on preliminary objections). Petitioner here availed himself of that administrative remedy. <u>Id.</u> The majority opinion fails to explain why that administrative process is so inadequate that it must be supplemented by judicial intrusion into the daily operation of a prison. In none of the cases cited by the majority opinion for the general rule of adherence to regulations is the existence of an alternate remedy discussed.

In sum, I acknowledge the general rule of administrative law of adherence to regulations. However, cases applying the general rule to agencies other than a prison do not consider, or even reference, the specialized rules analyzing inmates' rights while incarcerated after sentencing. Such cases dealing with other agencies have questionable applicability here. Based on the specialized rules analyzing inmates' rights after sentencing, and on the practical considerations argued by Respondents, I would deny Petitioner's application for summary relief.

_____
ROBERT SIMPSON, Judge

RES - 3