The Highland Park Community Club of Pittsburgh et al., Appellants *v.* The Zoning Board of Adjustment of the City of Pittsburgh, Appellee.

Argued March 15, 1984, before Judges MACPHAIL, BARRY and BLATT, sitting as a panel of three.

*R. Dell Ziegler, Buchanan, Ingersoll, Rodewald, Kyle & Buerger,* for appellants.

No appearance for appellee.

*Edward C. Leckey,* for intervenor, Jack Holzapfel.

Opinion by Judge MacPhail, May 14, 1984:

The Highland Park Community Club of Pittsburgh and several named members of the club (Appellants) appeal from a decision of the Court of Common Pleas of Allegheny County. The Court affirmed the decision of the Zoning Board of Adjustment of the City of Pittsburgh (Board), finding that Jack Holzapfel (Owner) had a vested right in the continued use of his property for six family occupancy in an area zoned R-2, two family residential.

The court of common pleas took no additional evidence; therefore we must determine whether the Board committed an error of law or abused its discretion. *Hipwell Manufacturing Co. v. Zoning Board of Adjustment,* 70 Pa. Commonwealth Ct. 83, 452 A.2d 605 (1982).

That part of the Board's decision labeled "Findings of Fact" is a summary of much of the testimony and the documents admitted into evidence. We must presume that the Board found credible the information it chose to so record.

The Board found that the property in question is in an area which was zoned "B" from 1923-1958,[1] and R-2 from 1958 to the present, one or two family occupancy. The Owner purchased the property in 1971, at which time the building contained six units. In January, 1976, the Owner applied for an occupancy permit following an inspection by the Bureau of Building Inspection (Bureau). The permit was granted for zoning only. In June, 1976, the Bureau advised the Owner that certain work was needed before the occupancy would be approved.[2] The Owner promptly secured a permit for enclosure of the furnace. In February, 1977, the Bureau notified the Owner that one unit must be removed from the basement to bring the total number of units in the building to

---

[1] In its decision, the Board stated that the Zoning Administrator testified that the 1923-1958 zoning was for multiple family occupancy. The transcript shows that he testified that the zoning then was two family. N.T. at 3.

There was additional testimony that the dwelling was used as a single family residence from 1931 until the 1940's, which use was in conformance with the "B" zoning ordinance. N.T. at 9. The conversion in use to a multiple family residence occurred prior to the change of the zoning ordinance to R-2, N.T. at 4, and the multiple family use was never in conformance with the zoning ordinance.

[2] Specifically, the Owner was advised to enclose the furnace and provide a second means of egress.

six. The Owner replied in October, 1977, agreeing to remove the seventh unit.[3]

In 1978, the Owner hired a contractor for the necessary renovation of the structure. The Certificate of Occupancy for six units was approved in October, 1979.

The Owner argued before the Board that the instant appeal was not timely filed, having been brought in May, 1982. The Board refused to dismiss the appeal, and we find that this issue has not been preserved.[4]

A municipal permit issued illegally or in violation of the law or under a mistake of fact confers no vested right or privilege upon the person to whom it is issued, regardless of any expenditures which may have been made pursuant thereto, unless such person has acquired a vested right to continue the use for which the permit was issued under existing law. The five factors to be considered in determining whether a property owner has a vested right to continue a use of his property even though a permit was issued because of a mistake are:

1) his due diligence in attempting to comply with the law;

2) his good faith throughout the proceedings;

3) the expenditure by him of substantial unrecoverable funds;

---

[3] Although the Board did not quote the contents of the Owner's letter, the copy of the letter which was admitted into evidence states that the unit would be removed after the termination of the present tenant's lease on August 30, 1978. Exhibit 13.

[4] The court of common pleas stated that the only issue was whether the Owner had acquired a vested right to use the property as a six unit dwelling. The Owner argues that bringing the issue of timeliness before the Board was sufficient. We do not agree. *Hogentogler v. Windsor Township Zoning Hearing Board*, 65 Pa. Commonwealth Ct. 451, 442 A.2d 834 (1982).

4) the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit;

5) the insufficiency of the evidence to prove that individual property rights or the public health, safety or welfare would be adversely af- · fected by the use of the permit.

*Department of Environmental Resources v. Flynn*, 21 Pa. Commonwealth Ct. 264, 344 A.2d 720 (1975).[5] The court of common pleas reviewed these factors, as have we. Contrary to the conclusion reached by the court of common pleas, we hold that there is not sufficient substantial evidence to warrant a positive finding on the first three of these factors, and that the Board erred as a matter of law.[6]

There was no evidence that the Owner made *any* effort to check the zoning of the property or to secure a multi-family occupancy permit prior to or at the time of his purchase of the property. *See Lennox v. Zoning Board of Adjustment of Pittsburgh*, 67 Pa. Commonwealth Ct. 417, 447 A.2d 1049 (1982). Further, there is no evidence that the Owner took any action to secure an occupancy permit until a representative of the Bureau inspected the premises and advised the Owner to obtain a permit. Also, there was a lapse of three and one-half years from the initial application until the actual issuance of the Certificate of Occupancy.[7] This included a lapse of at least eighteen

---

[5] These five factors were adopted by the Pennsylvania Supreme Court in *Petrosky v. Zoning Hearing Board of Upper Chichester Township*, 485 Pa. 501, 402 A.2d 1385 (1979).

[6] While neither this Court in *Flynn* nor our Supreme Court in *Petrosky* held that all five factors were absolute requirements, the failure here to meet three of the factors requires a holding that the Owner does not have a vested right.

[7] The Owner testified that some of this lapse of time was because his application was lost by the Bureau and he had to re-apply. The Board made no finding in this matter; however, the Owner testified

months between the Bureau's letter regarding the seventh unit and the Owner's eventual action to remove it.

We recognize that the Board did not find that the Owner made any misrepresentations to the Bureau after he finally took steps to secure an occupancy permit. In and of itself, that fact is simply insufficient to demonstrate good faith and due diligence; rather, we think the Owner's failure to act unless prodded and then to incur substantial delays in taking definitive action, demonstrates lack of good faith and lack of due diligence.[8] The Owner has not met his burden of proof. *See Flynn;* R. S. Ryan, Pennsylvania Zoning Law and Practice, §8.32 (supp. 1982).

Additionally, while the Board found that the Owner spent $8,000 to $10,000 in the renovation of the structure, there was no evidence that this expenditure was unrecoverable funds and the Board erred in so finding.

The Owner did not establish a vested right in the continued use of the property as a six unit dwelling. Accordingly, the order of the court of common pleas is reversed.

### ORDER

The Order of the Court of Common Pleas of Allegheny County dated April 22, 1983, SA 31 of 1983, is hereby reversed and the Certificate of Occupancy granting six dwelling units to Jack Holzapfel at 5814 Wellesley Ave., No. 36133 dated October 10, 1979, is hereby revoked.

---

that the seventh unit was removed after August 31, 1978. Therefore, at best the property would not have been properly renovated until nearly three years after the initial application.

[8] The record discloses that the Owner was no novice as a property owner. He owned some 38 properties, including others in the same ward. He was aware that the subject property was in an R-2 district at all times.