531 A.2d 98

Barbara B. Ernsberger, Galvin Devore, Rosemary Devore and Mary Ann Schmertz, Appellants *v.* Zoning Board of Adjustment of the City of Pittsburgh and Vikram Pearce, Appellees.

Argued May 18, 1987, before Judges MACPHAIL and BARRY, and Senior Judge BLATT, sitting as a panel of three.

*James W. Carroll, Jr., Tabakin, Carroll & Curtin,* for appellants.

*Samuel P. Kamin,* for appellee.

OPINION BY JUDGE MACPHAIL, September 16, 1987:

Barbara B. Ernsberger, Galvin Devore, Rosemary Devore and Mary Ann Schmertz (Appellants) appeal from an order of the Allegheny County Court of Common Pleas which affirmed a decision of the Pittsburgh Zoning Board of Adjustment (Board). We affirm.

Appellants are a group of residents of the Shadyside section of Pittsburgh who live near a building owned by Vikram Pearce (Owner). Owner bought the building on May 24, 1982 from Janet Klein Robbins for $100,000. At settlement, an agent of Robbins produced an occupancy permit dated April 9, 1981, which purported to permit three residential units in the building, and a Certificate of Zoning Classification and Legality of Use (Certificate) dated May 19, 1982. The Certificate, which was signed by a Pittsburgh city zoning official, acknowledged that the occupancy permit had been issued, that the property is located in an R-2 District in which no more than two families are allowed per dwelling, and further noted that "[t]he stated occupancy is *not* in accord with the use provisions of the Zoning Ordinance but qualifies as a legal nonconforming use."[1]

Sometime after Owner took possession of the property, the Bureau of Building Inspection of the City of Pittsburgh received a complaint about the use Owner was making of his building. Apparently because the Bureau could not find in its records an occupancy permit allowing the building to be used as a three-family dwelling, it sent a letter to Owner on August 30, 1984 notifying Owner that an occupancy permit was required. Owner produced the occupancy permit in his

---

[1] Exhibit J from the January 24, 1985 hearing of the Board, Reproduced Record at 36 (emphasis in original).

possession numbered 88552. City officials deemed the occupancy permit a forgery. Owner then requested a valid occupancy permit. The zoning administrator denied this request. Owner appealed this denial to the Board.

The Board found that Owner relied on the Certificate in buying the subject property, that Owner spent approximately $100,000 to purchase the property, and that if the property were reduced to two dwelling units the property would diminish in value by approximately $30,000. There was no evidence or argument presented to the effect that the Certificate was anything but genuine.

Representatives of the Pittsburgh Bureau of Building Inspection testified that the occupancy permit is not on file in the Bureau's official records and that the permit's number, No. 88552, is much higher than any that had yet been issued.

The Board held that despite the possibility that the occupancy permit could be a forgery, Owner's good-faith reliance on the Certificate entitled him to a vested right to use the building to house three families. No evidence was presented concerning whether the three-family occupancy was in fact a nonconforming use.

The Common Pleas Court affirmed the Board's decision. Appellants now bring the case before this Court for our consideration.

This Court has held that where, as in the case *sub judice*, the Common Pleas Court takes no additional evidence in affirming a decision of the Board finding a vested right, our scope of review on appeal is limited to determining whether the Board committed an error of law or an abuse of discretion. *Highland Park Community Club of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh*, 82 Pa. Commonwealth Ct. 380, 475 A.2d 925 (1984), *aff'd*, 509 Pa. 605, 506 A.2d 887 (1986). We

may conclude that the Board abused its discretion only if its findings are not supported by substantial evidence. *Valley View Civic Ass'n v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

Our Supreme Court noted in *Highland Park Community Club of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh,* 509 Pa. 605, 506 A.2d 887 (1986):

> The concept of the acquisition of 'vested rights' in an unlawful nonconforming use commencing after the effective date of the restrictions of the zoning ordinance which make it nonconforming is a judicial construct designed to provide individual relief in zoning cases involving egregious statutory or bureaucratic inequities. In part it involves the equitable concept of detrimental reliance.

*Id.* at 612, 506 A.2d at 891.

The Court in *Highland* goes on to set forth the five factors to be weighed in determining whether a permit holder has acquired a "vested right" in his permit even though such a permit was issued on the basis of mistake:

> 1)   his due diligence in attempting to comply with the law;
>
> 2)   his good faith throughout the proceedings;
>
> 3)   the expenditure by him of substantial unrecoverable funds;
>
> 4)   the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit;
>
> 5)   the insufficiency of the evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit.

*Id.* at 612-13, 506 A.2d at 891 (quoting *Petrosky v. Zoning Hearing Board of the Township of Upper Chichester,* 485 Pa. 501, 402 A.2d 1385 (1979)).

Further, the "vested right" doctrine applies whether the permit was issued because of a mistake of fact or because of a mistake of law, such as the misinterpretation of a zoning ordinance. *Three Rivers Youth v. Zoning Board of Adjustment of Pittsburgh,* 63 Pa. Commonwealth Ct. 184, 437 A.2d 1064 (1981).

In the case at bar, the occupancy permit that Owner was given by the former owner was apparently not issued by city officials at all; however, the Certificate was so issued. The question becomes one of whether Owner could obtain a vested occupancy right through the issuance by city officials of the Certificate of Zoning Classification and Legality of Use. We believe that Owner can so obtain a vested right in view of the fact that Section 3 of the Act of July 27, 1955, P.L. 288, *as amended,* 21 P.S. §613 provides:

(a) In . . . any city of the second class . . . which has adopted the provisions of this act it shall be unlawful for any owner to sell his property, or any interest therein, unless the owner shall first deliver to the purchaser at or prior to the time for settlement a certification of the District classification, issued by the appropriate municipal officer indicating the zoning classification and the legality of the existing use of the property to be sold.

Pittsburgh is a city of the second class which has adopted the provisions of the Act of July 27, 1955. As such, Section 613 of the Act is obviously meant to protect buyers of property by insuring that city officials have checked their records and concluded that the zoning classification and occupancy permit are in order. A buyer of property should be able to rely on such a certificate to the same extent as he could an original occupancy or building permit issued directly to him.

Further, the Certificate was obviously issued because of a mistake of fact by the city zoning specialist to the effect that an occupancy permit had been issued. In addition, a mistake of law could have also been involved in that it is not clear whether the three-family dwelling is indeed a nonconforming use. In any event, the Certificate was issued on the basis that there was in existence an occupancy permit and the use was a legal nonconforming one.

Having established that the vested right doctrine applies to Owner's situation, we must now examine whether the Board erred in determining that Owner had established the existence of a vested right pursuant to the five-prong analysis.

It appears from the record that Owner did apply due diligence in attempting to comply with the law and that he has exhibited good faith throughout the proceedings. Appellants admit that there is no evidence implicating Owner in the apparent forgery of the occupancy permit, but they do argue that Owner had a duty to check the city records himself to determine if a valid occupancy permit had been issued. We do not feel Owner had this duty in light of the fact that the Certificate was issued and signed by a city official attesting to the issuance of the building permit numbered 88552 pursuant to 21 P.S. §613. Appellants also argue that the fact that the use of the property was not in conformance with the zoning ordinance should have put Owner on notice that something was amiss. Again, we disagree in that the Certificate, issued by the city for Owner's protection, stated that the use was a legal nonconforming one. Owner would have no reason to inquire further about the matter.

Appellants argue that the Board's finding that Owner has expended substantial unrecoverable funds is not supported by the evidence. Again, we disagree. Ap-

pellants argue that the Board's findings that the value of the property would diminish by $30,000 if it were reduced to two dwelling units is unsupported by the testimony. Although Owner never himself testified to that figure, he did adopt his attorney's statements as to the value of the property in the following exchange with his attorney:

> MR. KAMIN: First of all, Mr. Pearce, you heard my statement. Would you characterize that testimony as being true and correct and you would testify the same way if asked to do so?
>
> MR. PEARCE: Yes.[2]

We believe this adoption by Owner of his attorney's statements is permissible in a zoning hearing where the formal rules of evidence are somewhat relaxed. Further, in general a property owner is competent to testify to the value of his property. *Sgarlat Estate v. Commonwealth*, 398 Pa. 406, 158 A.2d 541, *cert. denied*, 364 U.S. 817 (1960). In addition, there was testimony presented that the building had been used to house three families and three roomers and that when Owner bought the building, he expended funds to convert the building into exclusively a three-family dwelling. We found that an owner had "expended unrecoverable funds" under similar circumstances in *Three Rivers Youth*.

Appellants argue that any losses suffered by Owner are recoverable through a tort action against the seller for fraud and deceit or through Owner's title insurance. We feel that the possibility of either of these two recoveries is simply too conjectural to have a bearing on the present proceedings.

---

[2] Notes of Testimony from January 24, 1985 at 42, Reproduced Record at 48a.

We feel that the Board's conclusion that Owner has expended substantial unrecoverable funds is sound and based on common sense. Obviously, three units are more valuable than two to a landlord and there would be no way to recover the lost rents. Owner agreed to a purchase price in reliance on his ability to rent to three families.

Finally, we find that Appellants' testimony and arguments concerning whether the acknowledgement of a vested right in Owner will have an adverse effect on individual property rights or the public health, safety or welfare are unpersuasive. In a nutshell, Appellants argue that Owner's use of the property has adversely affected parking and the residential character of the neighborhood. We feel that the effect on the neighborhood conditions by a three-family dwelling as compared to a two-family dwelling is negligible. This negligible effect on the neighborhood must be balanced against the grave adverse effect on Owner if he were forced at this point to convert back to two units. Indeed, there was testimony that Owner has made the neighborhood situation better in that he has eliminated the three roomers from the building. If all applicable building codes are met, Owner's use of the building will not adversely affect the neighborhood.

We conclude that Owner met his burden under the five-prong analysis. Four of the prongs are clearly met. The fifth, which requires that the appeal period during which an appeal could have been taken from the issuance of the permit has expired, is inapplicable to the present case because Owner was never personally issued any kind of a permit from which any protestants could appeal. The Board was correct in determining that Owner has acquired vested rights to use the property as a three-unit dwelling.

Appellants also argue that the Court of Common Pleas erred in denying Appellants' motion to take additional evidence. We feel that the Common Pleas Court did not so err in that, as we have outlined above, the Board's decision was sound and based on substantial evidence. The taking of additional evidence was clearly unnecessary.

The order of the Common Pleas Court affirming the Board must be affirmed.

### ORDER

The order of the Court of Common Pleas of Allegheny County affirming the decision of the Pittsburgh Zoning Board of Adjustment determining that Vikram Pearce has acquired a vested right to use the subject property as a three-unit dwelling and denying Appellants' motion to take additional testimony is hereby affirmed.