IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Benjamin McAnaney,                                :
                                    Appellant     :
                                                  :
              v.                                  :
                                                  :
Philadelphia Zoning Board of        :  No. 250 C.D. 2018
Adjustment and Made1, LP            :  Argued:  November 15, 2018


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ANNE E. COVEY, Judge (P.)
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON              FILED:  December 4, 2019


              Benjamin McAnaney (Protestant) appeals from an order of the Court of
Common Pleas of Philadelphia County (trial court), dated January 12, 2018, which
denied Protestant's appeal and affirmed the decision of the City of Philadelphia
Zoning Board of Adjustment (Board).  In its decision, the Board held that the City
of Philadelphia Department of Licenses and Inspections (L&I) erred when it
determined that the 2007 zoning permits issued for properties at 1428, 1430 and
1432 Kenilworth Street, Philadelphia (collectively, Properties) had expired.  The
Board further concluded that L&I erred when it revoked the 2016 administrative
review permits for the Properties based on the erroneous determination that the 2007
zoning permits expired.  Upon review, we vacate and remand.

# BACKGROUND

Protestant lives across the street from the Properties. Board's Findings of Fact (F.F.) 33. The following timeline is quoted from the Board's decision.

i.     On February 27, 2007, a prior owner of the Properties applied for a zoning permit to subdivide the property then known as 1417 through 1431 Pemberton Street (now known as 1424 through 1432 Kenilworth, which includes the Properties at issue here, as well as 2 adjacent parcels) into five lots and to construct one four-story, single-family home on each of the newly created lots (a total of 5 homes).

ii.    On March 2, 2007, L&I issued a notice of refusal based on the proposed development's failure to meet applicable dimensional requirements; the proposal did not generate any use refusals.

iii.    On May 8, 2007, the [Board] granted dimensional variances required for the proposed relocation of lot lines and construction.

iv.    On August 14, 2007, [L&I] issued zoning permits [(collectively, 2007 Zoning Permits)] pursuant to the [Board's] approvals. The permits included the following language:

> In cases where construction or interior alterations are involved, a building permit must be obtained within one (1) year from the date of issuance of this zoning permit or no later than two years from the Zoning Board of Adjustment decision date.

v.    In 2008, building permits [(2008 Building Permits)] were issued pursuant to the 2007 approval.

vi.    Construction began within two years of the grant of zoning approvals.

vii.    Foundations were poured for all five of the approved homes, including those to be located on the Properties at issue here.

viii.    Single[-]family homes were constructed at 1424 and 1426 Kenilworth.

ix.    On August 14, 2014, 1426 Kenilworth was sold to a third party.

x.    In 2015, a prior owner of the Properties applied for new construction permits for the parcels at issue here (1428, 1430 and 1432 Kenilworth).

xi.    On December 26, 2015, L&I issued "Approved Permit Billing Statements" advising the prior owner that the building permit applications/plans had been approved. The prior owner did not pick up the permits or pay the required fees.[1]

xii.    [Made1, LP (Made1)] purchased the Properties (the three lots with existing foundations) on April 8, 2016.

xiii.    On April 29, [2016] [Made1] submitted Applications for Administrative Amendment, seeking minor changes to the zoning approvals granted in 2007.

xiv.    On May 11, 2016, [Made1] submitted additional materials to the zoning examiner reviewing its administrative review applications. The materials included the 2007 zoning approvals.

xv.    The zoning examiner sent the administrative review requests to the [Board] and on June 15, 2016, the [Board]

---

[1] If a permit is not picked up within 60 days, it is considered abandoned. *See* R.R. at 245a; *see also* Phila., Pa., The Phila. Code, tit. 4, Subcode A (Phila. Admin. Code), ch. 3, § A-301.8 (2012).

3

approved the requested changes to the 2007 zoning approvals.

F.F. 6(i)-(xv).

On August 11, 2016, L&I issued three identical (except for the referenced permit numbers) administrative review permits (collectively, 2016 Administrative Review Permits) for the Properties. F.F. 1. Each permit reflected administratively approved changes to a previously issued zoning/use registration permit and stated:

> TO AMEND A/P NO. [88991, 88992, and 88993, repectively] [sic] (CHILD PERMIT OF A/P NO 58563, CAL NO 1631) TO ERECT A ROOF DECK ABOVE THE 4TH FLOOR LEVEL ACCESSED BY EXTERIOR STAIRS, SIZE AND LOCATION AS SHOWN ON PLANS. CENTRAL AIR CONDITIONING AND GARBAGE DISPOSAL IN KITCHEN PER PROVISO.

F.F. 1 (citing Administrative Review Permit Nos. 692812, 692813 & 688492).

On October 7, 2016, Protestant wrote to L&I objecting to the proposed construction at the Properties. *See* F.F. 6(xvi). On December 15, 2016, L&I notified Made1 that the 2016 Administrative Review Permits were revoked based on L&I's finding that they had been issued in error. F.F. 2. The notification explained:

> [the 2007 Zoning Permits] A/P Nos 88991, 88992, and 88993 . . . expired 8/29/2011 when the associated building permit (A/P No. 96404) was expired because the authorized work was suspended for a period of six months after the time of commencing the work (Section A-302.2(1) of the Philadelphia Administrative Code). Since A/P Nos 88991, 88992, and 88993 were expired, they were not eligible to be amended.

4

F.F. 2; *see* Conclusion of Law (C.L.) 4.

Made1 subsequently appealed the revocations to the Board. It argued that the underlying 2007 Zoning Permits had not expired, and therefore, L&I erred in revoking the associated administrative review permits. F.F. 3. Made1 also argued, in the alternative, that it possessed vested rights in the issued permits. *Id.* Thereafter, the Board held a hearing and, later, voted to grant Made1's appeal.

In its decision, the Board concluded that L&I erred in determining that the 2007 Zoning Permits for the Properties expired and, therefore, erred in revoking the administrative review permits based on that determination. C.L. 1. The Board noted that L&I relied on Administrative Code Section A-302.2(1) to support its revocation, which section provides that "permits issued 'shall become invalid if the authorized work is not commenced within six months after issuance of the permit, or if the authorized work is suspended or abandoned for a period of six months after the time of commencing the work.'" C.L. 5. The Board stated, however, that Administrative Code Section A-302.2(1) provides an exception for certain permits, including zoning and use registration permits, and therefore, the legal authority cited by L&I does not support its position that the underlying zoning permits expired. C.L. 6. The Board stated that, at most, Administrative Code Section A-302.2(1) provides authority to find only that the building permit expired. C.L. 7.

Instead, the Board looked to a provision of the current Philadelphia Zoning Code[2] (Current Zoning Code) relating specifically to expiration of zoning permits and concluded that it does not support a finding that the expiration of a building permit will invalidate an associated zoning permit. C.L. 8. Specifically,

---

[2] Phila., Pa., Phila. Zoning Code § 14-303(1) (2016). The zoning code appears at Title 14 of The Philadelphia Code. The current Philadelphia Zoning Code was enacted pursuant to Bill No. 110845, approved December 22, 2011 and effective August 22, 2012.

the Board relied on Section 14-303(1) of the Current Zoning Code, entitled "Lapse of Permits and Approvals," and stated it provides:

> Except as specifically stated in any other section of this [Current] Zoning Code, an approval or permit granted under this [Current] Zoning Code, including approvals by the Historical Commission pursuant to § 14-1005 (Regulation), shall expire if construction or operation pursuant to the permit or approval **has not begun** within three years after the date the permit or approval was granted. ([E]mphasis added.)

C.L. 8.

The Board noted that the Properties are improved with foundations and stated that the City acknowledged that the original applicant received and began construction in 2008 within the required time. C.L. 10-11. The Board stated, therefore, there was no basis for finding that the 2007 Zoning Permits expired and, consequently, no basis to revoke the 2016 Administrative Review Permits. C.L. 12. The Board further stated that even if there was a suspension of work at the Properties, resulting in the expiration of the 2007 Zoning Permits, such would not support a revocation of the 2016 Administrative Review Permits because "there was no proof that work on the 2007 'parent' zoning permit had ceased for three years."[3] C.L. 13-14. The Board noted that two lots in the five-lot subdivision were sold and that on December 26, 2015, Made1's predecessor-in-interest was issued "approved permit billing statements" for the development of the Properties. C.L. 14. The Board also

---

[3] We are unclear why the Board considered whether work "ceased for three years,[]" *see* C.L. 14, when the provision the Board apparently relied upon considers whether "construction or operation . . . has not begun within three years." *See* C.L. 8 (citing Current Zoning Code § 14-303(1)).

stated that L&I's witness was unable to confirm that any inspections had been done to verify that work was not ongoing. C.L. 15.

Additionally, the Board stated that Made1 requested extension of the underlying permit under the Development Permit Extension Act[4] as part of its applications for administrative amendment, and as such, that Act "*automatically extended the underlying zoning permit by operation of law.*" C.L. 16-17 (emphasis in original).

Finally, the Board concluded, in the alternative, that Made1 had vested rights in the 2016 Administrative Review Permits "and the underlying 2007 [Z]oning [P]ermits[,]" and consequently, L&I could not revoke the permits or deem them expired. C.L. 2.

Protestant appealed to the trial court, which affirmed. The trial court stated that L&I erred in relying on Administrative Code Section A-302.2(1) because that section contains an explicit exception for zoning and use registration permits. Trial Court Opinion at 4. The trial court relied on Section 14-303 of the Current Zoning Code and stated that there was no dispute that construction began "within the two years required by Section 14-303.2(1)."[5] *Id.* Accordingly, the trial court

---

[4] The act formerly known as the Permit Extension Act was codified at Article XVI-I of the Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, added by Section 2.5 of the Act of July 6, 2010, P.L. 279, *formerly* 72 P.S. §§ 1601-I-1608.I, and was repealed by Section 20(2) of the Act of July 9, 2013, P.L. 362. A similar act, the Development Permit Extension Act, was also enacted by the Act of July 9, 2013, *as amended*, and is now found in 53 P.S. §§ 11703.1-11703.8.

The Board refers to these acts as "Pennsylvania Acts 46 of 2010 and 87 of 2012[.]" C.L. 16-17. "Pennsylvania Act[] 46 of 2010" is the Act of July 6, 2010, P.L. 279, No. 46, and "Pennsylvania Act[] . . . 87 of 2012" is the Act of July 2, 2012, P.L. 823, No. 87, which amended the Permit Extension Act.

[5] We are confused by the trial court's citation to "Section 14-303.2(1)," as we cannot locate that section in the Current Philadelphia Zoning Code. In the sentence preceding this reference, the trial court quotes "Code Section 14-303" as stating that a zoning permit will expire only if

7

concluded that the Board did not err when it determined that L&I wrongfully revoked the 2016 Administrative Review Permits, as the underling 2007 Zoning Permits had not expired. *Id.* at 5. Because of its disposition, the trial court did not reach the issue of vested rights. *Id.* at 4 n.3.

## PROTESTANT'S ARGUMENTS ON APPEAL

Protestant now appeals to this Court,[6] arguing that the trial court erred in affirming the Board's decision because the 2007 Zoning Permits expired. Initially, we note that Protestant acknowledges and agrees that L&I erred in relying on Administrative Code Section A-302.2 to support its decision. *See* Protestant's Brief at 32. Nevertheless, Protestant argues that L&I reached the correct result, and therefore, the Board should have upheld L&I's decision to revoke the permits. *Id.*

Protestant argues that the issue here is which zoning code applies to determine the validity of the 2007 Zoning Permits that were purportedly amended and renewed in 2016— the Current Zoning Code, effective August 22, 2012, or the former zoning code (Historical Zoning Code). Protestant argues the Board should have applied the Historical Zoning Code, and consequently, the trial court and the Board committed an error of law by relying on the Current Zoning Code and, in

---

construction pursuant to the approval or approval has not begun within *three* years of the date of the permit or approval. Trial Court Opinion at 4. The quoted material appears at Section 14-303(10)(a) of the Current Zoning Code, which addresses lapse of permits and approvals.

[6] Where, as here, the trial court does not take additional evidence, this Court's review is limited to determining whether the Board committed an error of law or an abuse of discretion. *See Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Id.* at 640. Substantial evidence is such evidence a reasonable mind might accept as adequate to support a conclusion. *Id.*

By order dated July 24, 2018, this Court precluded the City and the Board from filing briefs and participating in oral argument due to their failure to file briefs pursuant to this Court's order of June 28, 2018.

particular, Section 14-303. Protestant contends that it was error to rely on the Current Zoning Code because the 2007 Zoning Permits expired in 2008 and, therefore, had already expired when the Current Zoning Code went into effect in 2012. He argues the only way the Current Zoning Code could apply is if the 2007 Zoning Permits had not expired as of the effective date of the Current Zoning Code, August 22, 2012. Protestant claims the Current Zoning Code is not retroactive and cannot be applied to an already expired permit to revive that permit. Protestant cites to this Court's unpublished decision in *L & S Partnership, LLC v. Philadelphia Zoning Board of Adjustment*, (Pa. Cmwlth., No. 1493 C.D. 2016, filed Dec. 4, 2017), as being squarely on point to support his argument that the Historical Zoning Code applies here.

Applying the Historical Zoning Code, Protestant argues that the 2007 Zoning Permits expired in 2008. Protestant states the Historical Zoning Code provided that zoning permits "'shall expire one year after the date of issuance, unless construction work is begun prior thereto and is carried on to completion without voluntary interruption[.]'" Protestant's Brief at 16 (quoting Historical Zoning Code § 14-1703(4) (emphasis omitted)). Protestant argues that construction did not begin within one year and, once started, was not carried on to completion without voluntary interruption; therefore, he contends the permits expired. Protestant states no one disputes the residences have not been constructed. Additionally, Protestant argues that the Board's unsupported reference to the 2008 Building Permits is not relevant. He contends that there is no record evidence to support the Board's conclusion that building permits were issued in 2008, pointing out that Made1 never identified any issued building permits. Additionally, he points out that Made1 made a request

9

under the Right-to-Know Law[7] for any building permit issued for the Properties, and the City responded that there were "no records" of any building permits ever being issued.

Protestant also argues that the Board erred when it concluded that the Development Permit Extension Act automatically extended the 2007 Zoning Permits. Protestant contends that the Development Permit Extension Act did not extend the expiration date of any permits that had expired prior to January 2009. As stated above, Protestant contends that the 2007 Zoning Permits expired on or about August 14, 2008; therefore, the Development Permit Extension Act does not apply. Further, Protestant argues that, contrary to the Board's statement, the Development Permit Extension Act does not automatically apply to extend permits; rather, he contends that in cities of the first class (*i.e.*, Philadelphia), the original holder of the permit must apply for an extension and pay a fee. Protestant argues that Made1's applications for administrative amendment relied entirely on the Development Permit Extension Act to represent to L&I that it was appropriate to administratively amend the 2007 Zoning Permits in 2016. Protestant's Brief at 30. Protestant asserts that this representation implicitly recognized that the permits would have expired by 2016 when Made1 submitted its application. *Id.* Protestant contends that it was only after it was pointed out that the Development Permit Extension Act could not apply to the 2007 Zoning Permits that Made1 created the fiction that the permits never expired. *Id.*

Additionally, Protestant argues that Made1 had no vested rights in the expired and erroneously issued permits. Protestant contends that Made1 began unpermitted construction, without permits or notice and, as a result, is not entitled to

---

[7] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

10

equitable relief. Protestant's Brief at 35. Protestant also asserts that Made1 does not meet the requirements to establish vested rights and that a vested rights analysis is not appropriate where a permit expires pursuant to the plain language of a zoning ordinance. *Id.* at 35-36.

On the other hand, Made1 argues that neither the Historical Zoning Code nor the Current Zoning Code provisions impose any express limitation on how long an owner has to complete construction. Made1 contends that, based on the language of the 2007 Zoning Permits, the zoning permits would remain valid so long as a building permit was secured in two years. Made1 argues that the evidence of poured foundations, which it asserts requires a building permit, was substantial evidence for the Board to find and conclude that work had begun. Made1 also relies on the "parent" permit and argues that the Board found that there was no evidence that work under the "parent" permit ever ceased and that the "parent" permit remained valid. Made1 further contends that both the "current code" (citing A-302.9.1, the current Administrative Code) and the "Historical Zoning Code" (citing § 14-1704(1)(c) of the Historical Zoning Code) prohibit the City from revoking any permit that does not have an express expiration date without prior written notice and an opportunity to cure having been provided to the owner. Made1 also argues that it had vested rights in the 2016 Administrative Review Permits.

In response, Protestant argues there is no support for Made1's argument regarding the "parent" permit. Protestant argues that, to understand Made1's argument, one must distinguish between "use registration" permits, which govern the proposed land use, and "zoning" permits, which govern the proposed construction. Protestant contends that the "parent" permit to which Made1 refers is the "use registration" permit. Protestant asserts that while the "use registration"

11

permit created the lots, each lot thereafter required separate zoning permits, and therefore, Made1's attempt to unite the five lots under the "parent" permit must fail.

Protestant distinguishes between expiration and revocation and asserts the 2007 Zoning Permits expired and no written notice of such was required, while the 2016 Administrative Review Permits were revoked with notice. Further, Protestant argues that L&I has clear authority to revoke a permit. Protestant's Reply Brief at 14 (citing Philadelphia Home Rule Charter § 5-1002(e) and Administrative Code § A-302.9(1-3)). Protestant also argues that the existence of foundations does not prove the existence of building permits and, again, contends that there is no record evidence to support the Board's determination that building permits were issued for the Properties.

## DISCUSSION

Although Protestant concedes that L&I erroneously cited Administrative Code Section A-302.2 to support its decision to revoke the 2016 Administrative Review Permits, the concession does not end our inquiry. We agree with Protestant that the Board could have affirmed L&I's revocation of the 2016 Administrative Review Permits, if L&I reached the correct result. *See* Section 4-607(2) of the Philadelphia Home Rule Charter (stating that the Board may affirm, wholly or partly, or modify, the determination appealed and "make such order, requirement, decision or determination as ought to be made, and, to that end, it shall have all the powers of the officer from whom the appeal is taken"). Thus, we proceed to address the merits of the parties' arguments.

### a. Which Zoning Code applies?

Both the Historical Zoning Code and the Current Zoning Code provide for the "lapse" or "expiration" of zoning permits and do not require advance written

12

notice in such situations. *See* Current Zoning Code § 14-303(10) (concerning "[l]apse of [p]ermits and [a]pprovals"); Historical Zoning Code § 14-1703(4) (concerning zoning and use permits and stating those "expire" unless certain conditions are met).[8] Indeed, even Administrative Code Section A-302.2.2, in stating that zoning and use permits are excepted from the general rule regarding expiration provides, "See § 14-303(10)," thereby directing the reader to the zoning code (albeit the Current Zoning Code) provision regarding lapses of permits and approvals. *See* Admin. Code § A-302.2.2.

We reject Made1's argument that there cannot be a "de facto expiration" of a zoning permit and that there must be written notice. *See* Made1's Brief at 25-26. Although Made1 attempts to characterize the issue as the "revocation" of the zoning permits, the 2007 Zoning Permits were not revoked; rather, the issue with respect to the 2007 Zoning Permits is whether they expired. This is in contrast to the 2016 Administrative Review Permits which were "revoked," and Made1 received notice of such revocation.

---

[8] There is a difference between whether something expires and whether it was revoked. Expire means "to come to an end: such as . . . to exceed its period of validity." Expire, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/expire (last visited December 3, 2019). To revoke means "to annul by recalling or taking back." Revoke, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/revoke (last visited December 3, 2019).

Additionally, the provisions to which Made1 cites to support its argument that "pre-revocation" written notice is required concern situations where there is a violation that is capable of being corrected. *See* Made1's Brief at 26, n.7-8 (citing: (i) Historical Zoning Code § 14-1704(1)(c) (stating L&I shall have the power to serve written notice of violation on permit holder, which shall state the nature of the violation and that compliance shall be achieved within 30 days and if the violation is not corrected, L&I may revoke the permit); and (ii) current Administrative Code § A-302.9.1 (stating when grounds exist for revocation, L&I shall serve written notice stating the nature of the violation and allowing a reasonable period for compliance)).

13

Protestant asserts that the case of *L & S* is "controlling" and squarely on point to support his position that the Historical Zoning Code should have been applied here. Protestant's Brief at 25. In *L & S*,[9] the issue centered on the permitted use of the property and, specifically, whether the use as a three-family dwelling, permissible by virtue of a variance issued in 1960, had been abandoned. *L & S*, slip op. at 1. The owner had applied for a building permit in December 2015 to perform interior alterations and described the use of the building as a three-family dwelling. *L & S*, slip op. at 5. L&I issued the permit based on its determination that a variance granted in 1960 allowed for a three-family use in the single-family zoning district. *See L & S*, slip op. at 3-4. At the hearing before the Board, L&I's examiner testified that there was nothing in the Current Zoning Code that says a variance is lost if it is abandoned. *Id.* at 3. A protestant appealed the issuance of the permit, which the Board granted. *Id.* at 2 & 5. The Board found that the evidence established that the three-family use had been discontinued long before the effective date of the Current Zoning Code. *Id.* at 5. Therefore, the Board applied the provisions of the Historical Zoning Code to the facts to determine whether the three-family use was considered abandoned, and the Board concluded it was. *Id.* The trial court affirmed the Board, and on appeal to this Court, we affirmed. *Id.*

In *L & S*, we found important the Current Zoning Code's provision that addresses the transition from the Historical Zoning Code and provides that "[p]ermits and approvals that are valid on the effective date of [the Current Zoning Code] shall remain valid until their expiration date." *L & S*, slip op. at 14 (citing Current Zoning Code § 14-110(2)(a)). The Board had found that during the period before the effective date of the Current Zoning Code, the property had not been used

_____

[9] Initially, we note that because *L & S* is an unreported decision, it is not binding on this Court and may be considered only for its persuasive value. *See* 210 Pa. Code § 69.414.

14

consistent with the variance for the requisite time and, thus, in accordance with the Historical Zoning Code, the use was abandoned. *Id.* at 15. Accordingly, because the use had been abandoned prior to the effective date of the Current Zoning Code, we held the variance was not valid under the Current Zoning Code. *See id.* Although *L & S* is not binding authority, we find its analysis persuasive.

A zoning ordinance operates prospectively only. *Hempfield Twp. v. Hapchuk*, 620 A.2d 668, 671 (Pa. Cmwlth. 1993). The Current Zoning Code became effective August 22, 2012 and contains the following provision to address the transition from the Historical Zoning Code with respect to approved projects:

> The following transitional provisions shall apply to projects approved prior to the effective date of this Zoning Code.
>
> (a) Permits and approvals *that are valid on the effective date of this Zoning Code shall remain valid* until their expiration date. Projects with valid approvals or permits may be carried out in accordance with the development standards in effect at the time of approval, *provided that the permit or approval is valid and has not lapsed*[.]

Current Zoning Code § 14-110(2)(a) (emphasis added). Thus, in order for any permit to be valid under the Current Zoning Code, it must have been valid and in effect as of the effective date of the Current Zoning Code, August 22, 2012. In order to determine if a permit was valid and had not lapsed at the time the Current Zoning Code was enacted, we must necessarily look to the Historical Zoning Code, as that was the operative zoning code, and evaluate the validity of the permit under those standards. *See L & S.* To do otherwise and evaluate it under the Current Zoning Code could potentially, in effect, revive a permit or approval that was not valid on

15

the effective date of the Current Zoning Code. This would be an impermissible retroactive application of the Current Zoning Code and also is contrary to the plain language of Section 14-110(2) of the Current Zoning Code. Accordingly, the trial court and the Board committed an error of law by applying the Current Zoning Code rather than the Historical Zoning Code to determine if the 2007 Zoning Permits had expired.

### b. Application of Historical Zoning Code

The Historical Zoning Code provided the following with respect to permits:

> Zoning and/or Use Registration Permits issued after the effective date of this ordinance with respect to construction and use of a property, or where interior alterations are involved, *shall expire one year after the date of issuance, unless construction work is begun prior thereto and is carried on to completion without voluntary interruption* except that the Department of Licenses and Inspections shall extend, in writing, the expiration date of a zoning and/or use registration permit, for one (1) year, upon written request of the permittee, provided the proposed construction is the same as that authorized under the permit. No permit shall be extended by the Department more than once. Use Registration Permits, where no construction or interior alterations are involved, shall expire three months from the date of issuance unless the approved use has begun.

Historical Zoning Code § 14-1703(4) (emphasis added). The use of the term "shall" makes the provisions mandatory. Historical Zoning Code § 14-102(1). Thus, for the 2007 Zoning Permits to remain valid, construction work must have (i) begun within one year of the date of issuance of the permit; **and** (ii) been carried on to completion without voluntary interruption.

16

We conclude that the Board's findings are insufficient for this Court to conduct appellate review to determine whether the 2007 Zoning Permits expired under this provision of the Historical Zoning Code. The Board's findings state that in 2008, building permits were issued pursuant to the 2007 approval. F.F. 6(v). However, under the Historical Zoning Code, the date building permits were issued is not relevant; rather, the relevant fact is when "construction work" began.[10] We note that the Board's conclusion of law states that the original applicant received approved building permits and *began construction in 2008*, C.L. 9; however, the Board's findings of fact state that the building permit was issued in 2008 and that *construction work began within two years* of the grant of the zoning approvals. F.F. 6(vi). We cannot determine if these statements with respect to the construction work are, in fact, inconsistent. The Historical Zoning Code required that construction work commence within one year of the date of issuance of the permit and that it continue without voluntary interruption. Here, the 2007 Zoning Permits were issued on August 14, 2007. F.F. 6(iv). Consequently, this Court needs findings of fact to determine if construction work began prior to August 14, 2008. If the Board finds that construction work began timely, then it would also have to determine whether the construction work was carried on to completion without voluntary interruption. Although it appears no one disputes that construction has not been completed on the three particular lots comprising the Properties,[11] the findings on whether construction

---

[10] When a building permit is issued is not determinative of when construction began. Although a building permit may be issued, construction might not start for some time or may not start at all.

[11] We note that Made1's applications for administrative amendment referenced the 2007 Zoning Permits issued on August 14, 2007 for the three lots at issue (the Properties) (numbers 88991, 88992 and 88993, respectively) and not the "parent" permit or any other permits relating to the five-lot development as a whole. *See* R.R. at 84a, 86a, & 88a.

17

work was interrupted are unclear; further, if there was an interruption, there must be findings regarding whether the interruption was voluntary. As a result, we would need to remand the matter so that the Board can issue findings of fact and apply the Historical Zoning Code.[12] Before doing so, however, we will address the alternative grounds of the Board's decision—the Development Permit Extension Act and vested rights.

### c. Development Permit Extension Act

The Board concluded that, as a matter of law, the Development Permit Extension Act automatically extended the underlying zoning permits by operation of law. C.L. 17. However, this statement is legal error, as the Development Permit Extension Act did not automatically extend permits in Philadelphia, a city of the first class. Specifically, Section 3 of the Development Permit Extension Act provides, in pertinent part:

> **(a) Automatic suspension.**-- For an approval that is granted for or in effect between the beginning of the extension period [January 1, 2009[13]] and July 2, 2013,

---

[12] If the Board determines that the 2007 Zoning Permits did not expire under the Historical Zoning Code and, therefore, were in effect as of the effective date of the Current Zoning Code, then the Board could proceed to apply the Current Zoning Code.

[13] "Extension Period" is the period "beginning after December 31, 2008." 53 P.S. § 11703.2.
Section 2 of the Development Permit Extension Act provides the following relevant definitions:

> **"Approval."** Any of the following:
> (1) Except as provided in paragraphs (2) and (3), any government agency approval, agreement, permit, including a building permit or construction permit, or other authorization or decision:
> > (i) allowing a development or construction project to proceed; or

18

whether obtained before or after the beginning of the extension period, the running of the period of the approval shall be automatically suspended until July 2, 2016.

**(a.1) Cities of the first class.**--*In cities of the first class* and agencies established by such cities, *the suspension provided for in subsection (a) shall be valid*, for any covered approval, 20 days *after the notice from the approval holder to the agency that issued the approval of the approval holder's intent to exercise his or her rights* under the suspension *and payment of a fee* equal to 50% of the original application fee, but not to exceed $5,000. The agency that issued the approval may prescribe a form of notice.

---

(ii) relating to or affecting development, granted pursuant to a statute, regulation or ordinance adopted by a municipality, including the following:

. . .

(N) The act of April 21, 1949 (P.L. 665, No. 155), known as the First Class City Home Rule Act, as it relates to development and construction.

. . .

(2) in cities of the first class and agencies established by such cities, the term shall include only the issuance of a building permit, a zoning use and registration permit and any administrative approval, including an approval by a board or commission, that is a condition precedent to issuance of a building permit or zoning use and registration permit to an owner of property . . . .

. . .

**"Government agency."** The Commonwealth, a political subdivision or an agency, department, authority, commission or board of the Commonwealth or a political subdivision. The term includes regional commissions, boards or instrumentalities with the authority to issue approvals.

53 P.S. § 11703.2.

53 P.S. § 11703.3 (emphasis added). Thus, the extension is not automatic; notice must be given and a fee paid. *See id.;* L&I Bulletin, Dec. 2015 (L&I Bulletin), R.R. at 11a (stating that permits are extended by owner or permit holder submitting an "application . . . indicating [its] intent to exercise [its] right to extend a permit[,]" along with a check).

Nevertheless, the Board also concluded that Made1 requested extension of the underlying 2007 Zoning Permits under the Development Permit Extension Act "as part of its applications for administrative amendment." C.L. 16. However, there are no findings related to this and we are unclear on what evidence the Board bases its conclusion that the request was made "as part of [Made1's] applications for administrative amendment." *Id.* In particular, we cannot determine if: (1) the approval/permit holder gave notice to the agency issuing the approval/permit of the approval/permit holder's intention to exercise its rights; and (2) the fee was paid.[14] 53 P.S. § 11703.3; L&I Bulletin, R.R. at 11a. Additionally, even assuming that proper application for extension of the zoning permits was made, if the 2007 Zoning Permits expired before January 1, 2009, they would not be eligible for extension under the Development Permit Extension Act. *See* 53 P.S. § 11703.3; L&I Bulletin, R.R. at 11a. In this regard, it is necessary for the Board to apply the Historical

---

[14] Made1 argues that the City's December 2015 Code Bulletin made clear that the Development Permit Extension Act provides an automatic extension upon "request" and there is no prescribed form for making a request. Made1's Brief at 40 n.12. Made1 argues that its application for administrative amendment, made April 29, 2016, was a request to extend the permits under the Development Permit Extension Act. *See* R.R. at 80a, 84a, 86a & 88a. We note Made1's cover letter stated that the permits "were extended pursuant to [the Development Permit Extension Act]" and each application referred to the corresponding permit and stated that the permit "was extended pursuant to [the Development Permit Extension] Act." *See* R.R. at 80a, 84a, 86a & 88a. We are unclear if these statements, seemingly indicating that the permits had, in fact, already been extended, are the statements on which the Board based its conclusion that Made1 "requested extension." *See* C.L. 16.

20

Zoning Code to determine whether 2007 Zoning Permits expired prior to January 1, 2009. Thus, for the foregoing reasons, additional findings of fact are needed in order to determine whether the 2007 Zoning Permits were extended under the Development Permit Extension Act.

### d. Vested Rights

The Board concluded that Made1 had vested rights "to grant an Administrative Change to the zoning permits first issued in 2007[,]" C.L. 19, and therefore, L&I could not revoke the 2016 Administrative Review Permits. The trial court did not address this issue because it affirmed the Board on the grounds that the 2007 Zoning Permits had not expired. The parties have briefed the issue, and, here, our review is limited to determining whether the Board committed an error of law or an abuse of discretion.[15] As such, rather than remand this matter to the trial court to review the Board's decision in this regard, we will review the Board's decision in the interest of judicial economy.

"The general rule is that a permit which is issued illegally or in reliance upon a mistake of fact confers no vested right or privilege upon the person to whom it is issued, even though the person may have made expenditures in reliance upon that permit." *Carman v. Zoning Bd. of Adjustment of City of Phila.*, 638 A.2d 365, 368 (Pa. Cmwlth. 1994).

> However, the doctrine of vested rights may be applied as an exception to the general rule if the landowner to whom the permit was issued can demonstrate the following factors:

---

[15] *See supra* note 6.

1. his due diligence in attempting to comply with the law;

2. his good faith throughout the proceedings;

3. the expenditure of substantial unrecoverable funds;

4. the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit;

5. the insufficiency of the evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit.

*Id.* (citing *Petrosky v. Zoning Hearing Bd. of Upper Chichester*, 402 A.2d 1385, 1390 (Pa. 1979)). Thus, the doctrine of vested rights is recognized in Pennsylvania land use and zoning law as an equitable remedy precluding municipal enforcement of a land use regulation "where the municipality has taken some affirmative action such as the issuance of a permit[.]" *Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of Pittsburgh*, 997 A.2d 423, 441 (Pa. Cmwlth. 2010). The doctrine is designed to prevent injustice to the good faith permit holder who has acted in reliance on an invalid permit. *Id.* "[T]he 'vested right' doctrine applies whether the permit was issued because of a mistake of fact or because of a mistake of law, such as the misinterpretation of a zoning ordinance." *Ernsberger v. Zoning Bd. of Adjustment of Pittsburgh*, 531 A.2d 98, 100 (Pa. Cmwlth. 1987). Whether one exercised good faith to establish a vested right is a question of law. *See Bruno v. Zoning Bd. of Adjustment of Phila.*, 664 A.2d 1077, 1080-81 (Pa. Cmwlth. 1995) (holding that landowner as a matter of law failed to exercise good faith). In order to

22

determine whether the permit holder acted in good faith, the permit holder's reliance on an erroneously issued permit must at least have been reasonable. *Id.* at 1080.

Here, the Board concluded that Made1 acted in good faith, exercised due diligence and reasonably relied on L&I representatives' indication that the 2007 Zoning Permits remained valid. C.L. 21. The Board also noted that Made1 purchased the Properties for an amount in excess of one million dollars and concluded that Made1's evidence established expenditure of substantial, unrecoverable funds. C.L. 23 & 31. The Board also noted that it was unclear what should be the appeal period, but concluded that the relevant appeal period was "either in 2007 when the [zoning] permits were issued, or in 2011, when L&I maintains the permits expired." C.L. 32. The Board arrived at this conclusion based on its view that "the core issue presented is whether [Made1] reasonably relied on the 2007 [Zoning] [P]ermits . . . ." C.L. 32.

Contrary to the Board's statement, the core issue for the vested rights analysis is not whether Made1 reasonably relied on the 2007 Zoning Permits. Rather, the question is whether Made1 acquired vested rights in the 2016 Administrative Review Permits.[16] Therefore, a vested rights analysis is appropriate with respect to the 2016 Administrative Review Permits, which were issued and revoked. A vested rights analysis is not appropriate for the 2007 Zoning Permits, for which the issue at hand is whether they expired. *See supra* note 8. The Board failed to conduct an analysis of vested rights with respect to the 2016 Administrative

---

[16] We note that the Board's Conclusion of Law 2 seems to state that Made1 has vested rights in both the 2016 Administrative Review Permits and the "underlying 2007 [Z]oning [P]ermits[,]" whereas Conclusion of Law 19 states that Made1 has vested rights in the 2016 Administrative Permits.

23

Review Permits that were revoked. Consequently, the Board must apply the aforementioned factors as they relate to the 2016 Administrative Review Permits, including the factors of the appeal period[17] and whether there was expenditure of substantial unrecoverable funds in reliance on the 2016 Administrative Review Permits.[18]

Accordingly, for the foregoing reasons, we vacate the trial court's order which affirmed the Board's decision, and we remand the matter to the trial court with instructions to remand to the Board to issue a new decision in accordance with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[17] We note a claim of vested rights to a permit must fail where a timely appeal of the permit at issue has been taken. *In re Broad Mountain Dev. Co., LLC*, 17 A.3d 434, 445 (Pa. Cmwlth. 2011).

[18] *See Highland Park Cmty. Club of Pittsburgh v. Zoning Bd. of Adjustment of Pittsburgh*, 506 A.2d 887, 892 (Pa. 1986) (rejecting vested rights claim because applicant's expenditures were not "unrecoverable" and, in doing so, distinguishing cases finding vested rights where applicants applied for permits before they completed purchase of their properties); *Tohickon Valley Transfer, Inc. v. Tinicum Twp. Zoning Hearing Bd.*, 509 A.2d 896, 898 (Pa. Cmwlth. 1986) (stating, "the determinative question is whether the applicant ever expended substantial funds in reliance upon the permit"). We note that Made1 purchased the Properties on April 8, 2016, prior to even making application for the administrative review permits on April 29, 2016 and, thus, before issuance of the 2016 Administrative Review Permits on June 15, 2016. *See* F.F. 6(xii, xiii & xv).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Benjamin McAnaney,               :
                    Appellant    :
                                 :
        v.                       :
                                 :
Philadelphia Zoning Board of     :    No. 250 C.D. 2018
Adjustment and Made1, LP         :


O R D E R


AND NOW, this 4th day of December, 2019, the order of the Court of Common Pleas of Philadelphia County (trial court), dated January 12, 2018, is VACATED, and the matter is REMANDED to the trial court with instructions to remand to the Philadelphia Zoning Board of Adjustment to issue a new decision in accordance with the foregoing opinion.

Jurisdiction relinquished.


_____
CHRISTINE FIZZANO CANNON, Judge